**The HOME INDEMNITY COMPANY**
**v.**
**The UNITED STATES.**
No. 29–66.
United States Court of Claims.
May 12, 1967.

Edward Gallagher, Washington, D. C., for plaintiff.

Edward L. Metzler, Washington, D. C., with whom was Asst. Atty. Gen. Barefoot Sanders, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

ON DEFENDANT'S MOTION TO DIS-
MISS PETITION OR FOR JUDG-
MENT ON THE PLEADINGS
AND PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

COWEN, Chief Judge:

In May of 1963, Wayne Gangwish contracted with the United States through the Bureau of Land Management of the Department of the Interior to plow and seed some 15,000 acres of rangeland in Nevada at an estimated price of $64,779. Plaintiff, a surety company, issued payment and performance bonds pursuant to the Miller Act, 49 Stat. 793 (1935), as amended, 40 U.S.C. §§ 270a–270d (1964 ed.) for the contract. Plaintiff now seeks to recover from the Government a contract payment alleged to have been made improperly to Gangwish.

On March 5, 1964, plaintiff wrote the contracting officer that it was receiving claims from suppliers on the job and that plaintiff's letters to the contractor had remained unanswered. Plaintiff also sought information as to the status of the contract work and asked whether the Government knew of any unpaid claims. The contracting officer replied on March 9, 1964, forwarding the information requested and stating that he had been notified that the contractor had not paid the Standard Oil Company of California, which was encountering difficulties in collecting the account from the contractor.

The contractor, Gangwish, satisfactorily completed the contract on March 11, 1964, and signed and delivered a release. As a result, on April 7, 1964, $6,210.66 in retainages remained due under the contract.

On April 7, 1964, plaintiff's attorneys advised the contracting officer in writing that two suppliers, Cesco Contractors Equipment Supply Company and Standard Oil Company of California, had filed claims with plaintiff in the amount of $9,445.06 on their unpaid accounts for material furnished to the contractor. In view of such unpaid claims, plaintiff then demanded that "the balance of the con-

tract funds be retained pending settlement of the unpaid job expenses." On April 9, 1964, the contracting officer wrote the Mutch Oil Company, acknowledging the receipt of its claim against Gangwish for materials supplied for use on the contract and furnishing information regarding the terms of the payment bond executed by plaintiff.

On April 10, 1964, the contracting officer responded to plaintiff's written demand of April 7, 1964, and stated that, since the withholding of money otherwise due a contractor involved complicated legal issues, he was submitting the question to the Comptroller General.

By letter of June 16, 1964, the Assistant Comptroller General advised the Bureau of Land Management that, since the contractor had completed the work, it was entitled to be paid the balance due regardless of outstanding claims against him for labor and material. In the same letter, the agency was authorized to certify the balance due on the contract for payment to the contractor. Consequently, payment of the contract balance was made directly to the contractor on June 23, 1964. Plaintiff first learned of the Comptroller General's ruling and the payment to Gangwish about July 13, 1964, when it sought information from the contracting officer for use in connection with a contemplated suit against the contractor. Some 13 months later, plaintiff paid the two materialmen about $9,000 for material furnished the contractor to complete the contract.

■ Plaintiff now seeks to recover the $6,210.66 which the Government paid to the contractor. Relying upon this court's decision in Newark Ins. Co. v. United States, 144 Ct.Cl. 655, 169 F.Supp. 955 (1959), plaintiff maintains that, in the light of the facts we have recited above, the Government became liable to it by making the final payment to the contractor. We agree.

■ The rights of the surety in the final contract payment have long been recognized. Prairie State Nat. Bank of Chicago v. United States, 164 U.S. 227, 231–232, 17 S.Ct. 142, 41 L.Ed. 412

(1896); Henningsen v. United States Fid. & Guar. Co., 208 U.S. 404, 410, 28 S.Ct. 389, 52 L.Ed. 547 (1908); Pearlman v. Reliance Ins. Co., 371 U.S. 132, 137, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962). In *Prairie State Nat. Bank*, the Supreme Court quoted with approval the following statement from a state case:

> The law upon this subject seems to be, the reserved per cent. to be withheld until the completion of the work to be done is as much for the indemnity of him who may be a guarantor of the performance of the contract as for him for whom it is to be performed. And there is great justness in the rule adopted. Equitably, therefore, the sureties in such cases are entitled to have the sum agreed upon held as a fund out of which they may be indemnified, and if the principal releases it without their consent it discharges them from their undertaking.

Id. 164 U.S. at 239, 17 S.Ct. at 147. The contract itself reserves to the Government the right to withhold payments under the contract if laborers and mechanics are unpaid and to apply any balance owing to the contractor toward the payment of their claims. Thus, the contract retainage is a security held by the Government for the protection of itself and the surety "just as though the contractor had pledged so many Liberty Bonds." Town of River Junction v. Maryland Cas. Co., 110 F.2d 278, 281, 134 A.L.R. 727 (5th Cir.), cert. denied, 310 U.S. 634, 60 S.Ct. 1077, 84 L.Ed. 1404 (1940).

■ The defendant contends quite correctly that the surety's right is only a potential one which does not become an actuality until the surety satisfies a debt of its principal. However, the surety's rights of subrogation relate back to the date of the execution of the surety bonds, and the contractor can give no one a greater right in the retained percentages than that of the surety. Once the contractor's claims are satisfied by the surety, it is entitled to look to the retained fund for reimbursement. Nat'l Sur. Corp. v. United States, 133 F.Supp. 381, 384, 132 Ct.Cl. 724, 728–729 (1955); Continental Cas. Co. v. United States, 169 F.Supp. 945, 947, 145 Ct.Cl. 99, 103 (1959).

On April 7, 1964, when plaintiff demanded that the balance of contract funds be retained pending settlement of the unpaid claims of materialmen, the defendant had written notice that the contractor had defaulted on his payment bond by failing to pay materialmen's claims which exceeded the balance due on the contract. At that point, the defendant should have known that the contractor no longer had any property rights in the contract fund. Royal Indemnity Co. v. United States, 93 F.Supp. 891, 899, 117 Ct.Cl. 736, 755 (1950); Atlantic Ref. Co. v. Continental Cas. Co., 183 F. Supp. 478, 482 (W.D.Pa.1960); United States Fid. & Guar. Co. v. Triborough Bridge Authority, 297 N.Y. 31, 35–36, 74 N.E.2d 226, 227–28 (1947); 4 Corbin, Contracts § 901.

In Pearlman v. Reliance Ins. Co., supra, it was argued that, since the Miller Act requires a public contract surety to secure both a payment and a performance bond, the principles of law enunciated in *Prairie Bank* and *Henningsen* were no longer applicable in situations where the contractor has not defaulted in performance of the contract. The Supreme Court rejected that contention and held that the surety's rights of subrogation and property interest in the fund retained by the Government exist when the surety is called upon to pay laborers and materialmen to the same extent as when the surety is required to complete the contract.

■ When the contract involved here was completed, the Government was the stakeholder [1] of the final payment or security for which there were two contending claimants, the surety and the contractor. In view of plaintiff's equitable

I. See The Surety's Rights to Money Retained From Payments Made on a Public

Contract, 31 Fordham L.Rev. 161, 163 (1962).

rights in the fund, which were superior to those of the contractor, the Government had no right as a stakeholder to settle the question unilaterally by paying the fund to the contractor. The situation which then existed was in all material respects like that which was presented to this court in Newark Ins. Co. v. United States, 169 F.Supp. 955, 144 Ct.Cl. 655 (1959). There, the contractor had satisfactorily completed two contracts with the Government but had not paid various materialmen. The surety notified the Government of the contractor's default in that respect and requested the Government not to make the final contract payment to the contractor's assignee. At first, the Government agreed. Subsequently and without explanation, it paid the sum to the assignee despite the surety's priority in the retained fund. When the surety brought suit in this court we rejected the Government's contention that its payment, pursuant to the contract, relieved it of any liability.

> Surely a stakeholder, caught in the middle between two competing claimants, cannot, in effect, decide the merits of their claims by the mere physical act of delivering the stake to one of them. If his position as stakeholder becomes uncomfortable, and the claimants do not take steps to get a judicial solution of the question, the law has provided him with an interpleader proceeding by which he can deposit the stake in court and walk out free of the annoyance of being in the middle.

> If it is made to appear that the Government's officials, after due notice of the facts giving rise to an equitable right in the plaintiff surety company, and of the plaintiff's assertion of such a right, paid out, without a valid reason for so doing, the money in question to someone other than the plaintiff, the plaintiff will be entitled to a judgment.

Id. 169 F.Supp. at 957, 144 Ct.Cl. at 658–659.

Here, the Government also ignored plaintiff's rights by paying the contract retainage to the contractor. Thereafter, plaintiff was required to and did satisfy the claims of the materialmen. Consequently, we find no basis for departing from our holding in Newark and reach the same result in this action.

In its reply brief the defendant acknowledges that the contractor was in default on its payment bond as of March 7, 1964, when plaintiff first wrote the contracting officer or, at least on April 7, 1964, when plaintiff demanded that the contract fund not be paid to the contractor. But defendant argues that the contractor's default was not a breach of the Government contract. The Supreme Court has held to the contrary in Martin v. Nat'l Sur. Co., 300 U.S. 588, 57 S.Ct. 531, 81 L.Ed. 822 (1937), wherein it declared that the contractor's failure to pay materialmen was a violation of his duty to the Government, because "[t]he terms of the bond are read into the contract, and there is default under the contract when there is default under the bond." Id. at 598, 57 S.Ct. at 535.

Defendant's final argument is that plaintiff was also in default on its payment bond by failing to pay the outstanding claims of suppliers for materialmen prior to June 23, 1964, when the final payment was made to the contractor. Defendant points out that the Miller Act provides that materialmen who have not been paid before the expiration of a period of 90 days after the last of the material was furnished by them, shall have the right to sue on the payment bond. From this, defendant reasons that plaintiff was in default in not paying the suppliers and perfecting its right of subrogation before June 23, 1964. Moreover, it says that, since plaintiff waited until August 4, 1965, before satisfying the suppliers' claims, plaintiff's delay defeats its right to recover. In view of that argument, we make it clear that nothing we have said is intended to imply that the surety may be less than diligent in protecting its rights. We have so held. In United Pac. Ins. Co. v. United States, 362 F.2d 805, 808, 176 Ct.Cl. —— (1966), we found that the surety had not supplied the Gov-

ernment with adequate information that the contractor was in default on its payment bond and that it had also failed to request the Government to withhold the final payment before that payment was made to the contractor. As a consequence, we decided that the surety's neglect precluded its right to recover. That is not the situation here. First, plaintiff in this case did give adequate notice of the contractor's default and demanded that the Government withhold the final contract payment. In the second place, it is clear that the Government's release of the final payment to the contractor was in no way influenced by plaintiff's failure to satisfy the claims of the materialmen before that date. Rather, the payment to the contractor was based upon the Comptroller General's decision that, since the contractor had not defaulted in the performance of the contract, the Government was under no obligation to protect the rights of the surety and should pay the balance to the contractor without regard to the outstanding claims for material furnished. After the payment was made, the surety had lost the security which the law provides for it, and there is no showing that the Government has been prejudiced by the fact that the surety did not pay the suppliers' accounts until August 1965.

As for the plaintiff's failure to pay the materialmen before June 23, 1964, the facts show that as of April 10, 1964, the contracting officer was in doubt about his right to make the final payment to the contractor in light of plaintiff's prior demand. On that day, he informed plaintiff that the question was being submitted to the Comptroller General. Three days later, the surety furnished the contracting officer citations to cases, including Pearlman v. Reliance Ins. Co., supra, which supported its position as surety. Under these circumstances, we conclude that plaintiff had reasonable grounds for believing that the decision would be in its favor and hold its right to recover is not foreclosed by its failure to discharge the claims of the suppliers before the final contract payment was made.

It follows that plaintiff's motion for summary judgment is granted. It is entitled to judgment for the amount it paid the contractor's suppliers to the extent of the $6,210.66 paid to Gangwish, and the amount of recovery will be determined pursuant to Rule 47(c). Defendant's motion to dismiss or for judgment on the pleadings is denied.