NATIONAL SURETY CORPORATION,
a corporation, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. 68–500.

United States District Court,
N. D. Alabama, S. D.

Aug. 11, 1970.

London, Yancey, Clark & Allen, Bir-
mingham, Ala., for plaintiff.

Wayman G. Sherrer, U. S. Atty., B.
Don Hale, Asst. U. S. Atty., Birming-
ham, Ala., for defendant.

MEMORANDUM OPINION

McFADDEN, District Judge.

Plaintiff sues under the Tucker Act
to recover money allegedly erroneously
paid out to its principal.

Defendant, acting through the Vet-
erans Administration, awarded contract

V5121C–142, dated May 20, 1966, in the amount of $54,900.00 to Hartenstein Elevator Company (Contractor), for the replacement of two passenger and one freight elevator in the Veterans Administration Hospital at Tuscaloosa, Alabama. Plaintiff, as surety, and Hartenstein as principal, executed performance and payment bonds on this project in accordance with the Miller Act, 40 U.S.C. § 270a et seq.

The contract required completion within 240 days of June 16, 1966, the date of receipt of the notice to proceed, or by February 11, 1967, and subjected contractor to liquidated damages of $40.00 per calendar-day for failure to do so. The contract performance time was twice extended—110 calendar-days and 15 days, respectively—to June 16, 1967, and the contract price was decreased to $53,525.00.

The work was not complete by June 16, 1967, and liquidated damages were assessed from that date.

The contracting officer received telephone calls, on or about September 9, 1967, from two sub-contractors, Campbell Construction Company, Tuscaloosa, Alabama, and Hauenstein and Burmeister, Inc., Minneapolis, Minnesota, claiming non payment by the contractor for labor and materials furnished for the project in approximate respective amounts of $3,000 and $7,000. Both sub-contractors were referred to the plaintiff as surety under the payment bond.

On September 14, 1967, the contracting officer received a telephone call, confirmed by a telegram of the same date, from Henry Yates of the plaintiff's Dallas, Texas, office, which informed the contracting officer that the contractor was in default under the contract for failure to pay labor and material suppliers on the job. Plaintiff requested that the contracting officer refrain from making further payments of contract funds to the surety's principal on account of the contractor's default in payment of its obligations under the contract and by virtue of an assignment contained in the bond application. The contracting officer concedes the receipt of the telephone call and telegram.

The contracting officer sought advice by telephone from the Purchase and Contract Division in the Central Office of the Veterans Administration, and was advised that the plaintiff had no claim against the United States even if contractor had assigned payment in the bond application. The contracting officer was further advised that an assignment would have to be made through the contracting officer and that a surety did not qualify as a permissible assignee under the Assignment of Claims Act. 31 U.S.C. § 203. The contracting officer took the position that the plaintiff had no control over the payments to the contractor and if a request for partial payment was presented which met contract requirements he had no alternative but to pay the contractor directly, notwithstanding the surety's request and the notice of non payment from sub-contractors.

Hauenstein and Burmeister, Inc. advised the contracting officer by letter dated September 18, 1967 that it had not been paid for material supplied to the contractor and requested the identity of the surety and the terms of the payment bond. This sub-contractor was advised by letter dated September 26, 1967 that bonds under the contract were furnished by plaintiff; its recourse for collection was between it and surety, and the Government was obligated to the contractor and future payments would be made accordingly.

The contracting officer's representative submitted to the United States Treasury on September 19, 1967, the contractor's application of September 18, 1967, for a fifth progress payment in the sum of $10,420.00 based on a value of $53,050.00 for materials and labor in place less $1,500.00 retained, less liquidated damages of $3,240.00 (81 days at $40.00 per day) and less previous payments of $37,890.00.

The contracting officer advised plaintiff in a telegram dated September 22, 1967, that a payment of $10,420.00 would be paid to the contractor in accordance with the contract requirements unless specific objections, in accordance with law, were received by the contracting officer by the close of business on September 26, 1967. The telegram was received in the mail section of the V. A. Hospital, Dallas, Texas, at approximately 4:30 on Friday, September 22, 1967, and received by plaintiff's representative, Henry Yates, on Tuesday, September 26, 1967.

Upon receipt of the telegram, Mr. Yates immediately contacted representatives of the contractor requesting their cooperation in seeing that the progress estimate was used to pay the labor and material suppliers for the project. The contractor, in a letter dated September 28, 1967, and received by the contracting officer on October 2, 1967, requested that payments from contract funds be made directly to Hauenstein and Burmeister, Inc., and Campbell Construction Company in the amounts of $9,238.00 and $2,947.00, respectively. The United States, by telegram dated October 4, 1967, and received on October 9, 1967, advised the contractor that partial payment of $10,-420.00 was processed before receipt of its letters and that regulations prohibited payment to anyone other than the prime contractor.

The contracting officer, however, readily admitted in this Court that it was possible to stop the processing of contractor's payment application when it received the contractor's request on October 2, 1967, but that he was still of the opinion that payment should be made to the contractor and therefore did not take any action to stop payment, and made payment to the contractor.

Contractor did not pay his suppliers and it became necessary for the plaintiff to do so under the terms of its payment bond. Plaintiff paid the sum of $14,808.90 to K. M. White Company and $9,727.32 to Hauenstein and Bur-

meister, Inc., under the terms of its payment bond. Plaintiff received the sum of $3,207.00 from the United States representing the final payment under the contract less liquidated damages and this sum was applied to reduce plaintiff's loss under its bond; other funds were received by plaintiff reducing the loss to $10,420.00. (Plaintiff has waived its right to any sum in excess of $10,000, the jurisdictional limit under the Tucker Act.)

No portion of the $10,420.00 payment, which is the basis of this action, was used to pay any claimant on the job.

The issue in this case is whether the Government is liable for the payment it made to contractor on or about October 4, 1967, after it had been put on notice by the surety and requested by the contractor to make payments jointly to it and its suppliers.

It is the Court's finding upon consideration of the evidence that the United States paid the sum of $10,420.00 to the contractor after the bonded contract was in default and in express disregard of the surety's advice concerning the default and instructions not to pay the money out without its consent. The only explanation for so doing was that the contracting officer was of the opinion that he was obligated to pay contractor.

The Government's main position is that it had a right under the contract to make progress payments without consulting the surety or obtaining its consent and relies heavily on Continental Casualty Company v. Public Building Authority of the City of Scottsboro, 381 F.2d 10 (5th Cir. 1967). The Court has analyzed the opinion in that case. The contract in that case required payment on the architect's certificate and this was done. The Court held that payments in accordance with the contract did not release the surety. The decision is inapposite in this case as it involves a construction contract and bond that was construed under the Law of Alabama. In this case we are dealing with the validity and interpretation

of a contract entered into under the authority of a statute and ultimately of the Constitution. Federal Law therefore controls. See United States v. Seckinger, 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970).

This Court is bound to follow the rules of federal law enunciated by the United States Court of Claims and the United States Supreme Court construing contractual rights of the Government.

 The Court is of the opinion that the contracting officer was mistaken and that the advice he received was erroneous. The anti-assignment act does not require the formality of an assignment to perfect a surety's rights to funds in the Government's hands. A surety called upon to answer for its principal's default is subrogated to any funds due or to become due under the contract and this subrogation right relates back to the date of the bond. American Fidelity Co. v. National Bank of Evansville, 105 U.S. App.D.C. 312, 266 F.2d 910 (1959).

Newark Insurance Co. v. United States, 169 F.Supp. 955, 144 Ct.Cl. 655 (1959), enunciates the controlling legal principles. In *Newark* the Court of Claims held the Government liable to the surety where it had, after notice, paid contract funds to an assignee bank which had complied with all the requirements of the antiassignment statute, 31 U.S.C. § 203. The Court said:

> The Government says that, since it has no money in its hands which is owing to anyone in connection with the two contracts, there is no basis upon which it may be held liable to the plaintiff. It recognizes our decisions such as Royal Indemnity Co. v. United States, 93 F.Supp. 891, 117 Ct.Cl. 736, and National Surety Corp. v. United States, 133 F.Supp. 381, 132 Ct.Cl. 724, to the effect that if the Government has in its hands money earned by a contractor but claimed by both an assignee of the contractor, and a surety for the contractor who has been obliged to pay out money to fulfill the

contractor's obligations, the surety has the better right to the money. The Government says that those were cases where the Government was a mere stakeholder, and was satisfying the surety's superior equity out of money which the Government was, in any event, obliged to pay out to someone.

The Government says, correctly, that in the instant situation there is no stake. If the surety get a judgment against it, the government will have to pay it with its own money. That is a difference of great practical importance. Our question is whether it is of legal importance.

(1) Surely a stakeholder, caught in the middle between two competing claimants, cannot, in effect, decide the merits of their claims by the mere physical act of delivering the stake to one of them. If his position as stakeholder becomes uncomfortable, and the claimants do not take steps to get a judicial solution of the question, the law has provided him with an interpleader proceeding by which he can deposit the stake in court and walk out free of the annoyance of being in the middle.

(2) If it is made to appear that the Government's officials, after due notice of the facts giving rise to an equitable right in the plaintiff surety company, and of the plaintiff's assertion of such a right, paid out, without a valid reason for so doing, the money in question to someone other than the plaintiff, the plaintiff will be entitled to a judgment. (169 F.Supp. 956, 957)

This Court sees no distinction between payment to an assignee and payment to the contractor.

Home Indemnity v. United States, 376 F.2d 890, 180 Ct.Cl. 173 (1967), was a suit to recover money paid to a contractor. The Court followed *Newark* and held the Government liable for disregarding the instructions of the surety to withhold contract funds pending pay-

ment of several claims. In the opinion the Court stated:

On April 7, 1964, when plaintiff demanded that the balance of contract funds be retained pending settlement of the unpaid claims of materialmen, the defendant had written notice that the contractor had defaulted on his payment bond by failing to pay materialmen's claims which exceeded the balance due on the contract. At that point, the defendant should have known that the contractor no longer had any property rights in the contract fund. Royal Indemnity Co. v. United States, 93 F.Supp. 891, 899, 117 Ct. Cl. 736, 755 (1950); Atlantic Ref. Co. v. Continental Cas. Co., 183 F.Supp. 478, 482 (W.D.Pa.1960); United States Fid. & Guar. Co. v. Triborough Bridge Authority, 297 N.Y. 31, 35–36, 74 N.E.2d 226, 227–228 (1947); 4 Corbin, Contracts § 901.

In Pearlman v. Reliance Ins. Co., supra, [371 U.S. 132, 83 S.Ct. 232, 9 L. Ed.2d 190] it was argued that, since the Miller Act requires a public contract surety to secure both a payment and a performance bond, the principles of law enunciated in *Prairie Bank* and *Henningsen* were no longer applicable in situations where the contractor has not defaulted in performance of the contract. The Supreme Court rejected that contention and held that the surety's rights of subrogation and property interest in the fund retained by the Government exist when the surety is called upon to pay laborers and materialmen to the same extent as when the surety is required to complete the contract. (376 F.2d 893)

The Court of Claims in Fireman's Fund Insurance Company v. United States, 421 F.2d 706 (1970), said, at 708:

██ ██ The failure of the contractor to pay for the material obtained from English Electric was a breach of the contract with the Government, because "the terms of the [payment] bond are read into the contract, and there is default under the contract where there is default under the bond." Martin v. National Sur. Co., 300 U.S. 588, 598, 57 S.Ct. 531, 81 L.Ed. 822 (1937). As for the surety, it is clear that its rights of subrogation and property interest in the final contract payment exist when the surety is called upon to pay a materialman to the same extent as when it is required to complete the contract. Pearlman v. Reliance Ins. Co., 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed. 2d 190 (1962).

\* \* \* \* \* \*

██ The Government is not relieved of liability, because the surety had not satisfied the claim of the supplier at the time the Government was ready to make the final payment to the contractor. Rather, the pending litigation in the district court and the surety's demand demonstrated a breach of the contractor's obligation to the Government, and it assumed the risk of liability to the surety when the contracting officer failed to withhold the funds until the rights of the parties were determined.

The United States contends that in these cases the surety's rights to contract funds upon default of its contractor-principal have been limited to retainage as opposed to progress payments. While it is true that many of the cases have dealt solely with retainage, it is apparent that this stems from the fact that the retainage is in many instances all that is left to battle over when the surety discovers that a default exists. It is clear from a review of the cases that the Courts make no distinction between earned progress payments and retained percentages in determining the surety's equitable rights upon the contractor's default.

██ The surety's rights apply to the total fund, no matter what it is called, which remains in the hands of the United States (or any owner-obligee) at the time notice of default under its bond is established. Martin v. National Surety Company, 85 F.2d 135 (8th Cir. 1936), aff'd 300 U.S. 588, 57 S.Ct. 531, 81 L.Ed.

822 (1937); In re Dutcher Construction Corp., 378 F.2d 866 (2nd Cir. 1967).

In Fireman's Fund v. United States, supra, the contest was for earned balances under the contract, as opposed to retainage, and the Court, making no distinction as to the type of funds involved, held that the United States was liable to the surety for payment to the contractor.

■■ *In re Dutcher*, supra, followed Pearlman v. Reliance Ins. Co., 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962), which grew out of the same contract. In *Pearlman*, the Supreme Court of the United States reaffirmed its previous holdings in Prairie State Bank v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412 (1896), and Henningsen v. United States Fidelity and Guaranty Co., 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547 (1908), that there is a security interest in a withheld contractor's balance to which the surety, having sustained a loss for completion costs or for payment of labor and material claims, is subrogated. The purport of the *Pearlman* case is to place surety, who pays for the default of its principal, in the shoes of the owner-obligee for whom it has completed and in the place of laborers and materialmen whom it has paid, and who, but for the substitute remedy of its bond, would have an equitable lien on the contract funds. After *Pearlman* was decided the Trustee in Bankruptcy came back in the *Dutcher* case, contending that there was a distinction between surety's rights of equitable subrogation to retained percentages as opposed to earned progress balances, but the argument was rejected.

The United States makes the further contention that the plaintiff did not act with necessary diligence to avail itself of any right that it had to the payment herein and has not shown that progress payments did not enure to its benefit.

The Government calls attention to its telegram to the plaintiff dated September 22, 1967 in which it advises that the disputed payment would be made to the contractor unless specific objections were received by September 26, 1967. This telegram was received in the Veterans Administration office in Dallas at 4:30 P.M. on Friday, September 22, 1967, and it is undisputed that it was not received by the addressee, Mr. Yates, until the date of the deadline, September 26, 1967. Mr. Yates thereafter took immediate action and obtained a letter from the contractor to the United States requesting that the payment be made directly to claimants on the job. The United States disregarded this request on the basis that the payment had already been processed although it was admitted that the payment could have been stopped if the contracting officer had deemed it appropriate. The Court concludes that the plaintiff exercised reasonable diligence under the circumstances and that nothing that plaintiff did or failed to do contributed to the action taken by the United States. The contracting officer testified and the records so reveal that he understood that he was to pay the contractor no matter what anyone did. The Government, in taking this position, which the Court finds is arbitrary and unreasonable, cannot now be heard to complain that plaintiff was not diligent. The Court finds that the surety was prejudiced by the payment by the Government after notice of default. Once the Government was put on notice by the surety and requested by the contractor to pay its suppliers, it had no right to ignore these communications.

The Court, therefore, is of the opinion that the plaintiff is entitled to recover the sum of $10,000 in this cause and judgment will be entered accordingly.