**GREAT AMERICAN INSURANCE COMPANY**

v.

**The UNITED STATES and T. G. Williamson d/b/a Williamson Construction Company and Boulevard State Bank, Third-Party Defendant.**

**No. 151–72.**

United States Court of Claims.

Feb. 20, 1974.

Charles A. Sevier, Memphis, Tenn., atty. of record, for plaintiff.

Leslie H. Wiesenfelder, Washington, D.C., with whom was Acting Asst. Atty. Gen. Irving Jaffe, for defendant.

Ronald H. Rogg, Wichita, Kan., for third-party defendant Boulevard State Bank.

John W. Brimer, Wichita, Kan., for third-party defendant T. G. Williamson d/b/a Williamson Construction Co.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG and BENNETT, Judges.

COWEN, Chief Judge.

In this case, we are once again asked to determine the rights of several parties to priority in the balance due under a Government contract. On June 24, 1970, the United States, through the Department of the Navy, contracted with T. G. Williamson, doing business as Williamson Construction Company, for the replacement of exterior siding on Johnson Housing (MEMQ), Naval Air Station Memphis, Millington, Tennessee. Plaintiff, Great American Insurance Company, executed both performance and payment bonds for the contract pursuant to the Miller Act, 49 Stat. 793 (1935), as amended, 40 U.S.C. §§ 270a–270 (1970). On October 19, 1970, the contractor assigned to Boulevard State Bank all moneys due or to become due under the contract, and on the same day, the assignee bank gave notice of the assignment to plaintiff and defendant.[1]

In this action, plaintiff seeks reimbursement from the Government for payments made to laborers and materialmen under the terms of the surety's payment bond. The defendant asserts a right to $10,200 of the contract balance on the basis of a change order dated August 16, 1971, which assessed that amount against the contractor as liquidated damages for delay in completing the contract. Defendant further contends that in the event this court determines that any amount paid by defendant to the assignee bank was in fact erroneously paid, then defendant is entitled to a judgment against both the assignee and the contractor to the extent the surety is awarded a recovery herein. The Government has impleaded the contractor and the assignee bank as third-party defendants in this suit, and they contest their liability to the defendant.

The case is before the court on the parties' cross-motions for summary judgment, and there are no factual issues except those relating to the Government's right to judgment against the contractor.

The total contract price for the construction project was $102,564. During the performance of the contract, the defendant made two progress payments to the Boulevard State Bank. The first payment was made on December 3, 1970, in the amount of $42,660 (excluding retainages), and the second progress payment was on January 6, 1971, in the amount of $31,160 (excluding retainages).

On March 26, 1971, the final housing units in the project were accepted by defendant as complete. Following completion of the contract, on May 10, 1971, Great American advised the defendant in writing that it had notice of unpaid claims of subcontractors in excess of $31,000, which amount exceeded the unpaid contract balance then being held by the Government ($28,718). Great American then requested that the sure-

1. The assignment was made in accordance with the Assignment of Claims Act, 41 U.S.C. § 15 (1970).

ty's name be added as joint payee in any future payments to the contractor or that all future payments be withheld. Also, on May 10, 1971, the contractor requested that a "final payment" be made on the contract in the amount of $28,718.

The Government officer responsible for administering the contract took the position that payment could be withheld at the request of the surety only if the surety presented evidence of actual payment of the contractor's obligations, together with a court order or a written agreement signed by all parties. On May 19, 1971, the Government made a payment designated on the voucher as "Third Partial Payment" in the amount of $7,108 (excluding retainages) to the assignee bank.

On June 29, 1971, the contractor filed a petition in bankruptcy, and on July 1, 1971, he was adjudicated a bankrupt. The contractor alleges that notice of the bankruptcy was given to the United States by mailing notice on or about July 1, 1971, to the District Director of Internal Revenue, at Wichita, Kansas, and to the United States Attorney in Topeka, Kansas.

During the pendency of the bankruptcy, Williamson applied to the District Court for the District of Kansas for an order restraining the plaintiff from pursuing the prosecution of pending suits against the bankrupt. Williamson's application referred to two suits brought in the Western District of Tennessee by the subcontractors, Willey Painting Corporation and Crump Lime & Cement Company, against the surety under the payment bond. In these actions, the surety asserted a claim for a judgment over and against Williamson for the amount of any judgment entered against the surety in favor of the subcontractors.

By order of September 14, 1971, the referee in bankruptcy refused to enjoin the prosecution of the suits in the Western District of Tennessee, because he found that the surety's suit was necessary to enable the surety to pursue the contract retainages under the contract between the bankrupt and the United States. The referee further found that the subject matter of the litigation in Tennessee did not constitute an asset of the bankrupt's estate, and the referee also ordered the trustee to abandon any claim to any retainage funds held by the United States under the contract in question. On March 3, 1972, T. G. Williamson received a discharge in bankruptcy by order of the District Court for the District of Kansas.

It is established that during September 1971, the plaintiff surety discharged all claims made against it by reason of its payment bond. In so doing, the surety paid out $32,772.49, which exceeds the surety's total claims in this action.

There are three distinct contract funds in issue: (1) the $7,108 payment made to the assignee bank on May 19, 1971; (2) $10,200 claimed and retained by the Government as liquidated damages pursuant to the change order of August 16, 1971; and (3) a contract retainage in the amount of $11,400, which the Government admittedly holds as a stakeholder.

I

■ The principal issues raised by this case concern the $7,108 payment made to the assignee bank, and the liability of the contractor or the assignee bank to the defendant for its erroneous payment of that amount. We have repeatedly held that the surety who satisfies the contractor's obligations to pay laborers and materialmen under the payment bond has an equitable interest, superior to the interest of the contractor's assignee or the contractor's trustee in bankruptcy, in the unpaid contract balance held by the Government as a stakeholder. *See, e. g.,* Argonaut Insurance Co. v. United States, 434 F.2d 1362, 1369, 193 Ct.Cl. 483, 496 (1970); National Surety Corp. v. United States, 133 F.Supp. 381, 384, 132 Ct.Cl. 724, 728–729, cert. denied, 350 U.S. 902, 76 S.Ct.

181, 100 L.Ed. 793 (1955); Continental Casualty Co. v. United States, 169 F. Supp. 945, 145 Ct.Cl. 99 (1959).[2] On May 10, 1071, when plaintiff notified defendant of the unpaid claims of laborers and materialmen and asserted a claim to the unpaid contract balance, the defendant still held a total of $28,718, including the $7,108 in question. At that time, the Government asserted no claim to the $7,108 so that the Government held that amount as a stakeholder with full knowledge that both the surety and the assignee claimed a right to the money. Relying primarily on our decisions in Fireman's Fund Insurance Co. v. United States, 421 F.2d 706, 190 Ct. Cl. 804 (1970); Home Indemnity Co. v. United States, 376 F.2d 890, 180 Ct.Cl. 173 (1967); Newark Insurance Co. v. United States, 144 Ct.Cl. 655, 169 F. Supp. 955 (1959), the plaintiff argues that, upon notification of the claims of laborers and materialmen, the Government had a duty to withhold payment of the $7,108 to protect the interests of the surety, and that the Government should be held liable to the plaintiff in the amount of the erroneous payment to the assignee bank.

The third party defendant Boulevard State Bank, on the other hand, contends that the defendant is not liable to the plaintiff for the $7,108 for two reasons: (1) the $7,108 payment was a progress payment and not a final payment so that the surety may not recover from the defendant under the rationale of our decisions in Argonaut Insurance Co. v. United States, *supra*; Fireman's Fund Insurance Co. v. United States, *supra*; Home Indemnity Co. v. United States, *supra*, and Newark Insurance Co. v. United States, *supra*; and (2) that the rights of a payment bond surety are limited to the 10 percent retainage held by the Government.

■ Although the Government does not concede its liability, it acknowledges with admirable candor that there are no significant distinctions between this case and our prior decisions holding that the Government will be liable to the surety if, after due notification of the claims of laborers and materialmen, it wrongfully pays the final contract payment to the contractor or his assignee. Although the payment voucher designated the $7,108 payment as the "Third Partial Payment" and there were additional funds to be paid on the contract, the $7,108 was a contract payment made after the contract had been completed and accepted. Moreover, it was a payment made after the surety had given the defendant due notice that the contractor had failed to pay the claims of the subcontractors, which claims (approximately $31,000) then exceeded the balance due on the contract and held by the Government as a stakeholder ($28,-718). As in our previous decisions on this point, we hold that the Government improperly abandoned its role as a stakeholder and elected to decide the merits of the conflicting claims by paying the amount in dispute to the assignee without a valid reason for doing so. Therefore, the Government is liable for the $7,108 improperly paid to the assignee.

■ Secondly, it has often been recognized that a surety's claim to the unpaid contract balance is not limited to the 10 percent retainage as the third-party defendant Boulevard State Bank contends. *See, e. g.*, Argonaut Insurance Co. v. United States, 434 F.2d at 1369–1370, 193 Ct.Cl. at 496–497; Framingham Trust Co. v. Gould-National Batteries, Inc., 427 F.2d 856, 857 (1st Cir. 1970); National Shawmut Bank of Boston v. New Amsterdam Casualty Co., 411 F.2d 843, 848–849 (1st Cir. 1969); In re Dutcher Construction Corp., 378

2. Although the Supreme Court in Henningsen v. United States Fidelity & Guar. Co., 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547 (1908), and Pearlman v. Reliance Ins. Co., 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962), dealt only with contract retainages, the logic of those opinions is directly in line with the position of this court on the surety's right to assert priority in the total unpaid contract balance against the contractor, the contractor's assignee, or the contractor's trustee in bankruptcy.

F.2d 866, 869–871 (2d Cir. 1967); Reliance Insurance Co. v. Alaska State Housing Authority, 323 F.Supp. 1370, 1373 (D.Alaska 1971); National Surety Corp. v. United States, 319 F.Supp. 45, 49–50 (N.D.Ala.1970). Here, the surety's monetary obligation to the laborers and materialmen exceeded the total unpaid balance on the contract (including the retainage) and the plaintiff has priority over the assignee for the entire contract balance.

■ The contractor, G. T. Williamson, argues that the surety is estopped to pursue its claim against the defendant for any amount in excess of the retainage existing on September 14, 1971, because of the referee's order entered September 14, 1971, on Williamson's "Motion to Restrain and Enjoin further Pending Suits against Bankrupts." The contention is rejected, because it is clear that the order did not in any way attempt to limit the surety's action against the defendant to the 10 percent retainage.

## II

In view of its liability to the surety for the $7,108 paid to the assignee bank, the defendant seeks recovery of this amount from the bank. The defendant says, quite correctly, that in Newark Insurance Co. v. United States, 181 F. Supp. 246, 149 Ct.Cl. 170 (1960), hereinafter referred to as *Newark II*, this court held that the Government is entitled to recover such an erroneous payment even though the recipient is an assignee who received the payment under the Assignment of Claims Act.

*Newark II* was decided by a divided court. The present active judges believe that Judge Madden's dissent is more consistent with the language of the statute, as amended, the legislative history, and the other case authority, all as cited below. Reluctant as we are to overrule a decision of this court, we are constrained to do so here.

The 1951 amendment to the Assignment of Claims Act provides in part:

> In any case in which moneys due or to become due under any contract are or have been assigned pursuant to this section, no liability of any nature of the assignor to the United States or any department or agency thereof, whether arising from or independently of such contract, shall create or impose any liability on the part of the assignee to make restitution, refund, or repayment to the United States of any amount heretofore since July 1, 1950, or hereafter received under the assignment. 65 Stat. 41 (1951), currently codified in 41 U.S.C. § 15 (1970).

The broad language of the amendment was intended to encourage private financing of public contracts and to counteract certain rulings by the Comptroller General which operated to deter banks and other financing institutions from making loans to Government contractors.[3]

■ As a general rule, the Government has a right to recover funds which its agents have erroneously paid to another. *See* United States v. Wurts, 303 U.S. 414, 58 S.Ct. 637, 82 L.Ed. 932 (1938). However, this general rule does not apply when an Act of Congress expressly bars recovery. In the *Wurts* case, the Supreme Court stated:

> * * * The Government's right to recover funds, from a person who received them by mistake and without right, is not barred unless Congress has "clearly manifested its intention" to raise a statutory barrier. *Id.* at 416, 58 S.Ct. at 638.

The Government's claim against the assignee bank falls within the class of cases where Congress has expressly debarred the Government's right to recover.

■ Within the terms of the amendment, the $7,108 payment was an

---

3. H.R.Rep.No.376, 82d Cong., 1st Sess. 3 (1951); S.Rep.No.217, 82d Cong., 1st Sess. 2 (1951), U.S.Code Cong. & Admin.Serv. 1951, p. 1414.

amount "received under the assignment." It makes no difference, as far as the Boulevard State Bank is concerned, that the Government's agent failed to recognize the surety's superior equitable interest in such payment. The Government paid the money in question to the bank as the contractor's assignee, and the assignee is entitled to retain the funds in the absence of a showing of fraud on its part. *See* American Fidelity Co. v. National City Bank of Evansville, 105 U.S.App.D.C. 312, 266 F.2d 910, 916 (1959). *Cf.* Industrial Bank of Washington v. United States, 138 U.S.App.D.C. 19, 424 F.2d 932, 935 (1970).

### III

As we have noted above, the bank is not required to refund the erroneous payment of $7,108 because of the Assignment of Claims Act. However, this does not leave the Government without a remedy, since in paying the bank, the Government was satisfying a debt of the contractor to the assignee bank.

■ Under the facts before us, the contractor thus received a double benefit which he would not have obtained were it not for the operation of the Assignment of Claims Act. His debt to the bank and his liability for restitution to his surety are both relieved by the Government's double payment of the $7,108. We do not believe that Congress intended, by enacting the Assignment of Claims Act, to strip the sovereign of all its historical rights to recover *ex aequo et bono* the erroneous payments made by its public officers. *Cf.* Wisconsin Central R. R. v. United States, 164 U.S. 190, 212, 17 S.Ct. 45, 41 L.Ed. 399 (1896). Otherwise, there would be an unjust enrichment of the contractor. *See* Restatement of Restitution § 1 (1937). We therefore hold that the Government is subrogated to the bank's claim on the debt that was satisfied by the payment of the $7,108.

■ Third-party defendant Williamson has countered the Government's claim by a general denial of liability and with an additional defense that he was discharged from this particular debt by the referee's order dated March 3, 1972, which is a discharge in bankruptcy. The Government asserts the discharge to be ineffective against its subrogated debt for several reasons. While recognizing that Congress specifically made contingent claims capable of proof (11 U.S.C. § 103(a)(8)), the Government asserts that its claim was not discharged because it was "too" contingent. The thrust of the Government's argument is that until the surety filed its claim against the Government, the contingency mentioned in section 103(a)(8) was not created and hence could not have been discharged, because the surety filed its claim after the adjudication in bankruptcy. This is a persuasive argument, and with supporting affidavits or documentary evidence, could be sufficient to render judgment for the Government against the contractor. However, there are gaps in the record which need to be illuminated by trial or by stipulation. We do not know what debts due the Government, established or contingent, were included in the schedule of obligations filed by the contractor in his application to the bankruptcy court.

The Government also argues that the head of the contracting agency (the Secretary of the Navy) was not duly notified of the first meeting of creditors as prescribed by 11 U.S.C. § 94(e). However, Williamson, the bankrupt, shows by documentary evidence that a notice of the first meeting of creditors was mailed to the United States attorney in Topeka, Kansas. It is possible that the United States Attorney forwarded this notice to the Secretary of the Navy so that he had actual notice. The documents before us raise a doubt as to whether the notice requirement was fulfilled. Conceivably, the Secretary of the Navy was listed on the general schedule of creditors of the contractor. In sum, there are factual issues which preclude the rendition of judgment for the Gov-

ernment against the contractor for the $7,108 paid to the assignee bank.

## IV

■ Included in the unpaid balance on the contract is the sum of $10,200, which the Government asserts the right to retain under a change order executed August 16, 1971. It is well settled that the right of the United States to collect debts due it by a contractor, by offsetting these obligations against the funds retained under a Government contract, is superior to claims of a surety based upon the discharge of its obligations on its payment bond. United States v. Munsey Trust Co., 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947); United States Fidelity and Guaranty Co. v. United States, 475 F.2d 1377, 1383, 201 Ct.Cl. 1, 12 (1973).

■ Plaintiff concedes the Government's right of setoff as stated in the cited cases, but argues that it is entitled to a court trial to determine whether the Government's assessment of liquidated damages against the contractor was proper. This plea comes far too late and is rejected on that ground. Neither the contractor nor the surety, for itself or in behalf of the contractor, appealed from the assessment of liquidated damages. Consequently, the change order of August 16, 1971, is final and binding on the contractor and the surety as well.

## V

There remain for disposition only the contending claims of the assignee bank and the surety to $11,400 of the contract balance, which the Government acknowledges it holds purely as a stakeholder. As we recognized in part I of this opinion, the plaintiff as surety has a claim to the unpaid contract balance at the time of notification ($28,718) which is superior to that of the bank.[4] Consequently, the plaintiff is entitled to recover the $11,400 still held by the Government.

## VI

In view of the foregoing opinion, it is ordered:

(1) the cross-motion of plaintiff, Great American Insurance Company, for summary judgment is granted to the extent that plaintiff is entitled to recover the $7,108 which defendant erroneously paid to the assignee bank on May 19, 1971, plus the contract retainage of $11,410 which defendant holds as a stakeholder. Judgment is hereby entered for plaintiff against defendant for the sum of $18,518;

(2) plaintiff's cross-motion against defendant for the recovery of $10,200, deducted by defendant as liquidated damages, is denied and defendant's motion for summary judgment as to such liquidated damages is granted;

(3) defendant's motion for summary judgment against the Boulevard State Bank for recovery of the $7,108 paid to the bank on May 19, 1971, is denied;

(4) defendant's claim against the contractor, T. G. Williamson, for recovery of the $7,108 paid to the assignee bank is hereby remanded to the trial division of this court for determination of the factual and legal issues pertinent to the claim, and

(5) the cross-motion for summary judgment of the Boulevard State Bank is, except as stated in paragraph (3) of this part VI, denied.

4. To the extent that the position of the Fifth Circuit in Coconut Grove Exchange Bank v. New Amsterdam Casualty Co., 149 F.2d 73 (5th Cir. 1945), is in conflict with the views expressed herein, we respectfully decline to follow it.