ARGONAUT INSURANCE COMPANY,
a Corporation, Plaintiff

v.

The UNITED STATES, Defendant,

WELLS FARGO BANK, Third-Party
Defendant,

James A. A. Smith, Receiver, and Ted
Watkins Construction Co., Inc.,
Third-Party Defendants.

No. 306–68.

United States Court of Claims.

Dec. 11, 1970.

Gerald R. Knecht, San Francisco, Cal., attorney of record, for plaintiff. Knecht, Dingus & Boring, San Francisco, Cal., of counsel.

Mary J. Turner, Washington, D. C., with whom was Asst. Atty. Gen. William D. Ruckelshaus, for defendant.

John G. Keller, Jr., Washington, D. C., attorney of record for third-party defendant Wells Fargo. Leva, Hawes, Sy-mington, Martin & Oppenheimer, Washington, D. C., of counsel.

W. A. McGugin, Fresno, Cal., attorney of record for third-party defendant Ted Watkins Construction Co., Inc., and the Receiver.

Before COWEN, Chief Judge, LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND MOTION OF THIRD-PARTY WELLS FARGO FOR SUMMARY JUDGMENT AGAINST DEFENDANT

COWEN, Chief Judge.

In August of 1967, Ted Watkins Construction Co., Inc., herein Watkins, contracted with the United States through the Federal Highway Administration, Bureau of Public Roads, Department of Transportation, for the surfacing of 26.834 miles of the Klamath River National Forest Highway, in California, at a contract price of $478,842.10. Plaintiff, a Miller Act surety,[1] executed performance and payment bonds for the contract. Plaintiff now seeks to recover from defendant the final contract payment, as well as part of a progress payment made during the course of performance to Wells Fargo Bank, Watkins' assignee. Defendant challenges plaintiff's right to recover any part of either the progress payment or an unpaid balance of $151,562.82, determined to be due upon completion of the contract. Defendant has also filed a cross-claim against Wells Fargo Bank, impleaded as a third-party defendant, and asserts that if the court awards a judgment to plaintiff for any part of the progress payment, defendant is entitled to recover that amount from the bank. Wells Fargo Bank denies any liability to defendant, contends that plaintiff's claim has been discharged by plaintiff's participation in bankruptcy

1. Act of August 24, 1935, c. 642, 49 Stat. 793, as amended, 40 U.S.C. §§ 270a–270e (1964) (Supp. IV, 1965–68).

proceedings involving the contractor, and says that the bank's assignment entitles it to recover the entire unpaid balance due on the contract. The third-party contractor and James A. A. Smith, its receiver in bankruptcy, have filed an answer, requesting the court to determine the respective rights of the surety and the assignee bank in the contract balance held by defendant and praying that the contractor and receiver be given credit on the contractor's liability and obligation by the party whom the court finds entitled to recover.

The case comes before the court on cross-motions for summary judgment. We find there are no material issues of fact. The pertinent facts and our conclusions with respect to the bankruptcy proceedings will be discussed before our consideration of the parties' respective claims.

I

*The Bankruptcy Proceedings*

On September 11, 1968, a week after completion and acceptance of the project, Watkins filed a petition for proceedings for an arrangement under Chapter XI of the Bankruptcy Act,[2] in the United States District Court, Central District of California.

While the proceeding was pending, a notice of levy for taxes owed the United States by the contractor was made upon the Federal Highway Administration. On November 27, 1968, Watkins brought an action in the bankruptcy court to require the United States to offset the taxes against the final contract payment held by the Government. Plaintiff, defendant, Wells Fargo Bank, the Federal Highway Administration, the Internal Revenue Service, and Watkins were parties in the proceeding.

In an order dated January 7, 1969, the referee permitted the offset on the ground that the right of the United States to offset the taxes against the contract balance was superior to the rights of the other parties. The order was not appealed and became final, except as it was modified.[3]

A Plan of Arrangement for Watkins was approved by order of the bankruptcy court on May 28, 1969. The plan included an unsecured claim by the plaintiff surety for $218,719.31, and provided for payment in the amount proved and allowed by installments over an 8-year period. Wells Fargo Bank had been scheduled as a secured creditor and therefore was not affected by the arrangement.

■■ Wells Fargo Bank's first contention is that Section 371 of the Bankruptcy Act[4] provides that judicial confirmation of a plan of arrangement operates to discharge all provable, unsecured debts. Since plaintiff participated in the arrangement as an unsecured creditor, the bank argues that plaintiff's claim was discharged, thereby barring plaintiff's right to recover anything in this action.

We reject this contention. Section 371 merely operates to provide a debtor with the personal defense of discharge, which the debtor may assert in a subsequent proceeding. It does not extinguish the underlying debt. *Cf.* Kesler v. Department of Public Safety of Utah, 369 U.S. 153, 169–171, 82 S.Ct. 807, 7 L.Ed.2d 641 (1962); Zavelo v. Reeves, 227 U.S. 625, 33 S.Ct. 365, 57 L.Ed. 676 (1913). Nor does it prevent a surety from seeking to recover a final contract payment due on a Government contract. In re Gentry

2. Act of June 22, 1938, c. 575, 52 Stat. 905, as amended, 11 U.S.C. § 701 et seq. (1964), Supp. V (1965–69).

3. The January 7, 1969 order permitted an offset of $45,689.85, plus interest. By order dated February 25, 1969, the amount of taxes due was reduced to $44,121.40. This amount has been paid to the Internal Revenue Service.

4. 11 U.S.C. § 771 (1964). The section provides in relevant part:
   "The confirmation of an arrangement shall discharge *a debtor* from all his unsecured debts and liabilities provided for by the arrangement, * * *" [Emphasis added.]

Constr. Co., 200 F.Supp. 546 (E.D.Mich. 1961); In Re Dutcher Constr. Corp., 378 F.2d 866 (2d Cir. 1967).

There is no indication the bankruptcy court exercised jurisdiction over the contract funds now held by the Government, except to decide the limited question of the Government's right to offset the taxes owed by Watkins.

The Appearance and Assertion of Interest of Ted Watkins Construction Company, Contractor, and James A. A. Smith, Receiver, filed in this court on April 7, 1969, shows quite clearly that the bankruptcy court did not attempt to exercise any jurisdiction over the contract fund in dispute here. In that pleading, the contractor and receiver requested this court to determine the priority rights of plaintiff and Wells Fargo Bank in the unpaid balance due on the contract.

Wells Fargo Bank also contends that in the order of January 7, 1969, the referee determined that Watkins did not default on its contract and that plaintiff is collaterally estopped from so asserting here. Wells Fargo argues that despite plaintiff's argument that Watkins was in default, the referee ruled that Watkins had performed its contract with the Government.

The referee did not hold that Watkins had not defaulted on the contract. The referee found as a factual matter only that Watkins performed the work to the Government's satisfaction and there was not a breach of the performance bond.[5] Since the court made no ruling on the status of the payment bond or the contract as a whole, neither of which determinations was necessary in that proceeding,[6] the doctrine of collateral estoppel or res judicata does not preclude the court from deciding the issues presented in this case. Cromwell v. County of Sac, 94 U.S. 351, 352–353, 24 L.Ed. 195 (1876); United States v. International Building Co., 345 U.S. 502, 506, 73 S.Ct. 807, 97 L.Ed. 1182, reh. denied, 345 U.S. 978, 73 S.Ct. 1120, 97 L.Ed. 1392 (1953).

II

*Priority Rights in the Progress Payment and the Final Contract Payment*

(A) *Facts:* Watkins began the contract work in August 1967, and continued until November 15, when defendant suspended work until June 1968 for the winter season.

Although the work had proceeded on schedule, Watkins had financial difficulties, which began in late 1967. On May 20, 1968, Watkins advised plaintiff surety that it was unable to pay $52,229.93 in past obligations, and requested that plaintiff advance sufficient funds to permit Watkins to complete the project. On May 23, 1968, plaintiff paid Watkins' payroll for the week ending April 17, and on June 2, plaintiff paid the April 24 payroll. On May 23, Watkins directed the Bureau of Public Roads to make all future contract payments to plaintiff.

After an investigation of the contract work and Watkins' financial condition, however, plaintiff decided not to advance any more funds to Watkins for completion of the contract.

On June 6, 1968, the Government directed Watkins to resume work on the project.

On June 7, plaintiff wrote defendant, advising that the contractor had many unpaid bills for labor and materials for which plaintiff was liable on its payment bond. Plaintiff also requested that no further payments be made to the contractor without plaintiff's consent. Defendant replied it would follow Watkins' previous instruction to send payments to

---

5. The relevant portion of the opinion stated:
   "* * * [Watkins] performed all the work and completed all construction under said contract to the satisfaction of the BUREAU OF PUBLIC ROADS * * * and that ARGONAUT IN-SURANCE COMPANY did not * * * incur any liability under the performance bond * * *" [Op. Jan. 7, 1969]

6. See United States v. Munsey Trust Co., 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947).

plaintiff until the instructions were rescinded by the contractor.

On June 17, 1968, in consideration for a loan to finance completion of the contract, Watkins assigned all funds due and to become due on the contract to Wells Fargo Bank. Notice of the assignment, made pursuant to the Assignment of Claims Act,[7] was given to both plaintiff and defendant. Watkins also rescinded its direction that the Government send all payments to plaintiff.

Between June 7 and July 18, 1968, plaintiff and defendant held numerous telephone conversations concerning the project. On July 18, they met in a conference, and plaintiff urged the Government to declare Watkins in default and to terminate the contract. The Government refused, after showing plaintiff performance charts which indicated Watkins had performed on schedule, and appeared capable of completing the project within the time specified in the contract. Plaintiff then asked that the Government withhold Progress Payment No. 3 in the amount of $89,884.50, which was then due for completed work and was scheduled to be paid to Wells Fargo Bank, the assignee. Defendant refused on the grounds this would throw the contract into default and expose the Government to a breach of contract action. However, the Government's representatives stated that the surety's "hold-up" request would be honored as to the retainages and final payment due upon completion of the contract. Plaintiff said that it would take no formal action to prevent the payment but that it reserved all rights in it. On July 22, 1968, Progress Payment 3 was sent to Wells Fargo Bank.

The July progress payment was not credited against Watkins' indebtedness to Wells Fargo Bank. It was deposited in a trust account and all the funds in the account were spent on completion of the project.

On August 16, 1968, plaintiff again wrote defendant, advising that plaintiff reserved the right to seek recovery of the July progress payment.

On September 4, 1968, the project was completed and accepted, and on the same day, plaintiff was informed in a telephone call from the Regional Counsel for the Federal Highway Administration that no further payments would be made from the final contract earnings or the retainages to the contractor or its assignee in the absence of an agreement by the interested parties.

On September 9, 1968, a conference was held in the San Francisco office of the Federal Highway Administration. Besides representatives of the Government, the conference was attended by the contractor and by representatives of the plaintiff and the assignee bank. Since the interested parties could not agree on any basis for the payment of the balance due on the contract, they were told that the Government would probably pay the sum into court for a determination of the conflicting claims.

The plaintiff and defendant stipulated that after deducting the offset for taxes, the amount due and unpaid on the contract is the sum of $149,862.82. After the stipulation was filed, the Board of Contract Appeals of the Department of Transportation dismissed the contractor's appeal on the basis of a settlement which remitted $1,700 withheld as liquidated damages. As a result, the amount now held by the Government as the balance due on the contract is $151,562.82. Of this amount, $40,839.50 represents the 10 percent retention fund.

(B) *Progress Payment No. 3:* Plaintiff contends that notice of the contractor's failure to pay labor and material bills and plaintiff-surety's request that the Government withhold the progress payment imposed a legal obligation on the Government to make no disposition of the payment that was inconsistent with the surety's subrogation rights. Shortly before the progress payment was made, the Government had refused plaintiff's

---

7. Act of 1940, 54 Stat. 1029, 31 U.S.C. § 203 (1964), as amended, 65 Stat. 41, 41 U.S.C. § 15 (1964).

request to terminate the contract, and plaintiff now says that even if the failure to make the progress payment to the bank had resulted in a shutdown of the work and a default in the contractor's performance, the defendant is liable to plaintiff for the defendant's refusal to allow plaintiff to control the disposition of the payment—at least in the amount necessary to fully reimburse the plaintiff for its payment of the contractor's obligations to laborers and materialmen. In support of its position, plaintiff relies on Newark Ins. Co. v. United States, 169 F.Supp. 955, 144 Ct.Cl. 655 (1959); Home Indem. Co. v. United States, 376 F.2d 890, 180 Ct.Cl. 173 (1967), and Hanover Ins. Co. v. United States, 279 F. Supp. 851 (S.D.N.Y.1967).

Plaintiff's reliance on these decisions is unfounded, because each involved a situation in which the Government was the stakeholder of a final contract payment due after the completion of performance. Also, in each case, the Government, after due notice of the rights asserted by a payment bond surety, abandoned its role as a stakeholder and elected to decide the merits of conflicting claims and to pay the amount in dispute to another party without a valid reason for doing so.

Among other contentions advanced by them, defendant and Wells Fargo Bank argue that to hold the Government liable to plaintiff under the circumstances in this case grants the payment bond surety economic control of both the decision to terminate and the completion of the contract. The Government also maintains that the granting of such rights to the surety will embroil the Government in disputes between the contractor and surety during performance of the contract, subject the Government to suit by the contractor for failure to make timely progress payments,[8] and deprive the Government of its right to administer the contract in a manner deemed necessary to protect its interests.

On the facts before us in this case, we think the Government's position is well taken. In reaching this conclusion, we call attention to the well-established principle that the subrogation right claimed by plaintiff is not a right that springs from contract but is merely a creature of equity, to be carried out in the exercise of equitable discretion and with due regard to the legal and equitable rights of others. National Sur. Corp., et al. v. United States, 133 F.Supp. 381, 132 Ct.Cl. 724, cert. denied, First Nat'l Bank in Houston v. United States, 350 U.S. 902, 76 S.Ct. 181, 100 L.Ed. 793 (1955); Compania Anonima Venezolana De Nav. v. A. J. Perez Exp. Co., 303 F.2d 692 (5th Cir. 1962). The rules that govern when a claimed right of subrogation conflicts with other rights of higher rank have been well expressed in 50 Am.Jur., Subrogation, § 13 at 691–92:

> § 13. *Weighing or Balancing Equities or Rights.*—As in other cases of equitable relief, the court in administering subrogation will weigh and balance the equities of the parties, and have due regard to the legal and equitable rights of others. Subrogation will not be enforced to the prejudice of other rights of equal or higher rank, or to displace an intervening right or title, or to overthrow the equity of another person. Nor will it be enforced at the expense of a legal right or where the rights and interests of the creditor will be imperiled or prejudiced.

The application of these general rules depends, of course, upon the facts and circumstances of each case, but we think they provide the guidelines for deciding the issue involving the progress payment.

During performance, the Government's role is substantially different from that of a mere stakeholder of a final contract payment. The defendant has an important interest in the timely and efficient completion of the contract work. In furtherance of this interest, the Government contracts for a broad range of rights

---

8. *E. g.*, Guerini Stone Co. v. P. J. Carlin Constr. Co., 248 U.S. 334, 39 S.Ct. 102, 63 L.Ed. 275 (1919); United States v.

Lennox Metal Mfg. Co., 225 F.2d 302 (2d Cir. 1955).

which are designed to promote continuation of the contract work. These provisions give the Government considerable discretion and flexibility in administering the contract.[9] Public policy supports this flexibility in light of the various unforeseen circumstances which may hinder performance.

The contract provisions here gave the contracting officer the right to decide whether to terminate and re-let the contract.

The "Termination" clause [10] stated in part:

(a) If the Contractor refuses or fails to prosecute the work, or any separable part thereto, * * * *the Government may,* * * * terminate his right to proceed with the work or such part of the work as to which there has been a delay. In such event the Government *may* take over the work and prosecute the same to completion, * * * [Emphasis added.]

If we assume there were grounds for termination, the decision whether to terminate here was discretionary, Schlesinger v. United States, 390 F.2d 702, 182 Ct.Cl. 571, 581 (1968), and it was to be made by the contracting officer.

The contract also gave defendant the right to exercise broad discretion in administering payments as the work progressed in order to promote performance. The "Payments" clause [11] provided in part:

PAYMENTS TO CONTRACTOR

*   *   *   *   *   *

(b) The Government will make progress payments monthly as the work proceeds, or at more frequent intervals as determined by the Contracting Officer, on estimates approved by the Contracting Officer * * *

(c) In making such progress payments, there shall be retained 10 percent of the estimated amount until final completion and acceptance of the contract work. However, if the Contracting Officer, at any time after 50 percent of the work has been completed, finds that satisfactory progress is being made, he may authorize any of the remaining progress payments to be made in full * * *

Moreover, the Government's discretion with respect to making progress payments when a contractor has financial difficulties during performance is spelled out in the following provision of the procurement regulations:

* * * For contracts with those contractors whose financial condition is doubtful or not strong in relation to progress payments outstanding or to be outstanding, * * * full information concerning both the progress under the contracts involved (including the status of subcontract), and concerning the contractor's other operations and financial condition, should be obtained and analyzed at frequent intervals, with a view to the better protection of the interest of the Government and the taking of such action as may be proper to make contract performance more certain * * * [41 C.F.R. § 1–30.521 (1966)]

During the performance of the contract, the Government has a duty to exercise its discretion responsibly and to consider the surety's interest in conjunction with other problems encountered in the administration of the contract. It is not necessary to define the limits of the Government's discretion in this case, because the plaintiff has failed to show an abuse of that discretion. On the contrary, the facts are sufficient to show that the Government's refusal to terminate the contract and its determination

---

9. This policy underlies the "Disputes" clause and many of the so-called adjustment clauses of the contract.

10. General Provision 5—*Termination For Default—Damages For Delay—Time Extensions.*

11. General Provision 7, *Payments To Contractor.*

that the payment of Progress Payment No. 3 to Wells Fargo Bank was essential to the continued performance and timely completion of the contract, were well within the range of discretion conferred on the contracting agency by the terms of the contract and the applicable regulations.

During June and July 1968, when plaintiff requested that the contract be terminated because of the contractor's failure to pay obligations due laborers and materialmen, performance charts showed that the contractor's progress was satisfactory. Also, the arrangement by which Wells Fargo was to place the progress payment in a trust account to pay the contractor's costs of continued performance, gave the Government reasonable assurance that the money would be spent for that purpose and that the work would be completed within the time then allowed for completion. The parties are now agreed that all the money was spent on the project. There is also evidence that the contract could not have been completed as quickly or as cheaply by another contractor. An affidavit by the manager of A. Teichert & Son, Inc., a highway construction firm, states that plaintiff hired that firm in June 1968, to estimate the time and cost for completion of the project. In a report made on June 12, 1968, the Teichert Company informed plaintiff that it would be less expensive for Watkins to complete the project than to have Teichert perform the work. The manager of Teichert Company was also of the opinion that Watkins could complete the project within the time specified in the contract.

For the reasons stated, we conclude that plaintiff's equitable claim of subrogation to the progress payment made to Wells Fargo Bank must fall before the superior legal rights of the Government. We hold, therefore, that plaintiff is not entitled to recover any part of that progress payment.

This result makes it unnecessary for us to consider the Government's cross-claim against Wells Fargo Bank, and the cross-claim is dismissed.

(C) *The Final Contract Payment:* Plaintiff, the payment bond surety, has been compelled to and has paid the contractor's obligations for labor and material in an aggregate amount which exceeds the entire contract balance now held by defendant as a stakeholder. In seeking recovery of this fund, plaintiff bases its claim on Pearlman v. Reliance Ins. Co., 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962), and many decisions of this court, including Home Indem. Co. v. United States, *supra;* Fidelity & Deposit Co. of Md. v. United States, 393 F.2d 834, 183 Ct.Cl. 908 (1968), and Fireman's Fund Ins. Co. v. United States, 421 F.2d 706, 190 Ct.Cl. 804 (1970). We hold that plaintiff has a superior right to the unpaid balance due on the contract, for we find no distinction between this case and numerous decisions holding that such a surety has an equitable right in the final contract payment, superior to the right of the contractor's assignee.

However, the defendant and Wells Fargo Bank argue with considerable vigor that, even if the surety prevails, it is entitled to no more than the 10 percent retainage. In making this contention, the defendant has seized upon a few references such as " * * * the reserved percent to be withheld * * * " in Prairie State Bank v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412 (1896) and "* * * equitable claim to the retained fund * * *" in Henningsen v. United States Fidelity & Guar. Co., 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547 (1908). It is apparant from a reading of these decisions that the question raised by defendant was not in issue in these cases and that the attention of the Supreme Court was focused upon the superior equitable rights of the surety rather than the composition of the fund sought to be recovered.

Neither the Government nor the bank has cited any decision which expressly limits the surety's recovery to the 10 percent retainage in comparable factual situations where the entire contract balance is required to reimburse the surety. In

a number of decisions by this court and other courts, the surety has been awarded judgment for the balance due and unpaid on the contract. Continental Cas. Co. v. United States, 169 F.Supp. 945, 145 Ct.Cl. 99 (1959); (surety awarded judgment for the unpaid balance on the contract after deduction for the contractor's indebtness to the Government). Fidelity & Deposit Co. of Md. v. United States, *supra;* (surety again allowed to recover the balance due on the contract less a debt to the Government). Fireman's Fund Ins. Co. v. United States, *supra;* (surety awarded judgment for the full amount of a contract fund paid in settlement of the contractor's claims decided on appeal by a board of contract appeals), and North Denver Bank et al. v. United States, Ct.Cl., 432 F.2d 466, decided October 16, 1970; (surety awarded judgment for the unpaid balance due on the contract less a deduction for liquidated damages). The same result was reached in Hanover Ins. Co. v. United States, *supra,* where the judgment in favor of the surety was also for the balance due on the contract at the time of its completion.

The contention now made by the defendant and Wells Fargo Bank was also squarely presented to and flatly rejected by the Second Circuit in a recent decision. In Re Dutcher Constr. Corp., *supra,* 378 F.2d 870–871.

In view of these decisions, there is no reason to belabor the point. Plaintiff is entitled to recover the entire balance now due and unpaid on the completion of the contract, including the adjustment resulting from the administrative decision.

### III

#### Conclusion

As previously stated, the amount now held by the Government as the balance due on the contract is $151,562.82. Plaintiff and defendant have stipulated that pursuant to claims made against plaintiff on its Miller Act bond, plaintiff has paid out $187,840.30. Attached to plaintiff's motion for summary judgment is an affidavit of Porter J. Courtney, which was executed after the stipulation was filed. The affidavit shows that, after deducting certain adjustments received by plaintiff, the net amount which it paid to discharge the contractor's debts for labor and material is the sum of $184,683.22, an amount which exceeds the contract balance. Accordingly, plaintiff's motion for summary judgment is granted and judgment is hereby rendered in its favor against the defendant in the sum of $151,562.82.

Defendant's cross-motion for summary judgment is granted in part; plaintiff is not entitled to recover any portion of Progress Payment No. 3, which the defendant paid to the Wells Fargo Bank on July 22, 1968; in all other respects, the defendant's motion is denied.

Defendant's cross-claim against Wells Fargo Bank is dismissed; in all other respects, the bank's motion for summary judgment against defendant is hereby denied.

Although James A. A. Smith, Receiver, and Ted Watkins Construction Co., Inc., Contractor, did not file a motion for summary judgment, they filed a pleading in which they requested that when this court determines whether the surety or the assignee bank is entitled to recover the contract balance, the successful party be required to give the contractor and receiver credit on the contractor's liability. This is a reasonable and proper request. Therefore, upon payment of the judgment here rendered, plaintiff is directed to furnish the receiver and the contractor a receipt showing the amount paid.