Randall E. HENDRICKS, et al., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 9–84L.

United States Claims Court.

Sept. 15, 1986.

Randall E. Hendricks, Kansas City, Mo., for plaintiff.

Elizabeth Ann Peterson, Washington, D.C., with whom was Asst. Atty. Gen. F. Henry Habicht II, for defendant.

---

## ORDER DENYING PARTIES' MOTIONS FOR SUMMARY JUDGMENT

MOODY R. TIDWELL, III, Judge:

This inverse condemnation case comes before the court on Cross-Motions for Summary Judgment and involves an alleged taking in violation of the Fifth Amendment of the United States Constitution over which this court has jurisdiction under 28 U.S.C. § 1491 (1982).

The plaintiffs are owners of certain property located upstream from the Harry S. Truman (HST) Dam and Reservoir. The United States had obtained flowage easements on the property prior to plaintiffs purchase. Plaintiffs assert that the United States has operated the HST dam in an improper manner and for purposes that were not within those designated by the dam's plan of operations. This, they allege, has resulted in their property being inundated with water more often and for longer durations than would have occurred had the dam's plan of operations been followed. The alleged improper operation has destroyed both their crops and their ability to utilize the property for agricultural purposes. Plaintiffs further assert that the flooding has been in excess of the amount and duration of any anticipated flooding represented by defendant at the time the flowage easements were taken. Plaintiffs move for summary judgment as to liability, and seek eventual compensation for the enlarged flowage easements that have allegedly been imposed on their property at such time that the parties agree or the court determines the proper valuation of their property.

The United States contends that the dam was neither used for improper purposes or operated improperly, and that any flooding that has occurred has been within the terms of the existing flowage easements. Defendant also contends that the parol evidence rule prevents the plaintiffs from altering the terms of the easements by any extrinsic evidence, and further asserts that the burden of risk of any flooding which has subsequently occurred shifted from the government to the property owner once the easements were properly taken.

After careful consideration of the parties' briefs, supporting memoranda, and the relevant law, the court concludes that there are genuine disputed issues of material fact; and that this matter is not ripe for summary judgment. Therefore, the Defendant's Motion for Summary Judgment, and Plaintiffs' Cross-Motion for Summary Judgment are denied.

### FACTS

In 1954, Congress authorized construction of the Harry S. Truman Dam (HST) as part of the general comprehensive plan for flood control and other purposes in the Missouri River Basin. *See* River and Harbor Act-Flood Control Act of 1954, Pub. L. No. 83–780, *amended by* River and Harbor Act of 1962, Pub. L. No. 87–874, 76 Stat. 1173 (1962).

As part of the process of constructing the dam and the resulting formation of the reservoir, certain lands that were situated within the area to be inundated were condemned by the United States through its power of eminent domain. The government took flowage easements on lands that were not to be permanently inundated, but which might occasionally be flooded by the operation of the dam.

The value of the easements, as determined by defendant, was established by developing a plan of operations for the dam that estimated the intended elevation for the reservoir pool, the flood frequency, and the duration of inundation, if and when flooding should occur. This information was used by the defendant to negotiate any flowage easements that were needed for the proper operation of the dam, including the flowage easements on plaintiffs' property.

Under the dam's plan of operations, waters from the reservoir were to be released at a rate of flow sufficient to meet certain target flow rates which were measured at various downstream gauges. The amount of water to be released depended on vari-

ous surrounding circumstances, but was to be an amount sufficient to minimize flooding, provide hydroelectric power, provide a safe recreational area for the public, and minimize harmful effects on fish and wildlife. The primary function of the dam was flood control, however, this use was not exclusive.

In November of 1977, the United States, through condemnation proceedings, acquired a flowage easement for $170,000 from Mrs. Katie Schmidt on 404 acres of property designated as Tract 8510E. (The price of the easement represents an out of court settlement between defendant and Mrs. Schmidt.) In April of 1978, the defendant acquired another flowage easement on 38.3 acres of property, designated as Tract 8509E, from Mrs. Sarah M. Ainsworth. This easement was obtained by an Easement Deed for a purchase price of $8,000. Both tracts of land are situated upstream from the HST dam near the confluence of Clear Creek and the Osage River, and contain the property which is the subject matter of this litigation.

The pertinent language of the flowage easement on Tract 8510E reads as follows:

The public uses for which said land is taken are as follows: The said land is necessary to provide for flood control in the Missouri River Basin and for other uses incident thereto. The said land has been selected for acquisition by the United States for use in connection with the Harry S. Truman Dam and Reservoir, Missouri, as part of the general comprehensive plan for flood control and other purposes in the Missouri River Basin, and for such other uses as may be authorized by Congress or by Executive Order.

\* \* \* \* \* \*

[The United States has the right] occasionally to overflow, flood and submerge the land lying above elevation 706' m.s.l. ... in connection with the operation and maintenance of the project.

Together with all right, title and interest in and to the structures and improvements now situate on the land, except fencing above elevation 706' m.s.l.; re-

serving, however, to the owner, his heirs and assigns, the right and privilege at the owner's expense to use and maintain the levee and related water pumping system, if any, now situate on the land; provided, however, that the aforesaid privilege of use and maintenance shall be totally subordinate to the absolute right of the United States, without notice and without incurring liability of any nature whatsoever, to remove, breach, flood or otherwise damage or destroy in any manner whatsoever, the said levee and related water pumping system ... The above estate is taken subject to existing easements ... reserving, however, to the owner, his heirs and assigns, all rights and privileges which may be used and enjoyed without interfering with the use of the project for the purposes authorized by Congress or abridging the rights and easement hereby acquired ...

The pertinent language in the flowage easement on Tract 8509E reads as follows:

[The United States has] the perpetual right, power, privilege and easement occasionally to overflow, flood and submerge Tract No. 8509E ... in connection with the operation and maintenance of the Harry S. Truman Dam and Reservoir Project ... improvements now situate on the land, except fencing and levees above elevation 706' m.s.l.; reserving, however, to the owner, his heirs and assigns, the right and privilege at the owner's expense to use and maintain the levee, now situate on the land; provided, however, that the aforesaid privilege and use shall be totally subordinate to the absolute right of the United States, without notice and without incurring any liability of any nature whatsoever, to remove, breach, flood or otherwise damage or destroy in any manner whatsoever, the said levee.

In January of 1979, the plaintiffs, Mr. Randall E. Hendricks and Mrs. JoAnn M. Hendricks, acquired the underlying fee of both tracts of land. They paid $100,000 for Tract 8510E, and $5,000 for Tract 8509E.

These purchases were made with knowledge of the existing easements.

When the plaintiffs purchased the property, the HST reservoir had not yet reached it's intended multi-purpose pool level of 706' m.s.l. After the Hendricks' purchase, the reservoir filled to the multi-purpose reservoir pool level and their property has subsequently been periodically flooded.

Plaintiffs, seeking compensation for the alleged flooding in excess of the existing easements, initiated this cause of action. Defendants moved for Summary Judgment, and plaintiffs filed a Cross-Motion for Summary Judgment as to liability only, reserving for subsequent proceedings the issue of valuation of their property that has allegedly been taken.

## DISCUSSION

The present case comes before this court on Cross-Motions for Summary Judgment. Summary judgment is appropriate only where there are no issues of material fact in dispute and judgment is appropriate as a matter of law. *South Louisiana Grain Services, Inc. v. United States*, 1 Cl.Ct. 281, 289 (1982). The United States Court of Appeals for the Federal Circuit has directed this court to be very cautious when asked to grant summary judgments in taking cases. The Federal Circuit has stated:

> The fact-intensive nature of just compensation jurisprudence to date, however disorienting in other contexts, argues against precipitous grants of summary judgment....

> \*      \*      \*      \*      \*      \*

> The grant of summary judgment where a trial would be fruitless and the moving party is clearly entitled to judgment as a matter of law serves an exemplary role in the judicial process. Because the remedy can be harsh in its finality, however, its application must be accompanied by great care in respect of the entire record and the relevant law.

*Yuba Goldfields, Inc. v. United States*, 723 F.2d 884, 887, 891 (Fed.Cir.1983).

The present case involves factual disputes as to the meaning of certain terms in the existing easements. Defendant asserts that the easements are wholly integrated, and clear and unambiguous on their face. Plaintiffs assert that they contain ambiguous language which fail to state the frequency and duration of the flooding and that the flooding which has occurred has been beyond any flooding anticipated by the parties at the time the flowage easement was taken.

The defendant claims that the parol evidence rule prevents the plaintiffs from introducing any extrinsic evidence to show the intent of the parties at the time the easements were taken because the language of the easements is unambiguous. However, application of the parol evidence rule is excepted where the language of the document is ambiguous and subject to various interpretations. *See David Nassif Associates v. United States*, 557 F.2d 249, 214 Ct.Cl. 407 (1977). This is especially true where it is necessary to determine the extent and the reasonableness of the use of the easement. *Penn Bowling Recreation Center, Inc. v. Hot Shoppes, Inc.*, 179 F.2d 64 (D.C.Cir.1949). What is reasonable in a given set of circumstances is an issue of fact. *Chernick v. United States*, 372 F.2d 492, 178 Ct.Cl. 498, 504 (1967); *see, e.g., Metric Construction Co. v. United States*, 1 Cl.Ct. 383, 398–99 (1983) (reasonableness of costs).

It is well established that the fact-sensitive and critical element of an inverse condemnation case is that of inevitable recurring floods. *Singleton v. United States*, 6 Cl.Ct. 156 (1984) citing *Bartz v. United States*, 224 Ct.Cl. 583, 593, 633 F.2d 571, 577 (1980). The language of the existing easements states that the United States has the right to occasionally flood the plaintiffs' property above the 706' m.s.l. level, without ever defining what the term "occasionally" means. It is well settled that the interpretation of a document is a question of law and not a question of fact. *See e.g., A & K Plumbing and Mechanical, Inc. v. United States*, 1 Cl.Ct. 716, 719–21 (1983). However, the term "occasionally" is inher-

ently ambiguous. Any relevant extrinsic evidence that allows the court to determine whether floods were "inevitably recurring" in view of the court's interpretation of a right to "occasionally" flood should be guardedly used, but should not be barred by the parol evidence rule.

A separate issue of material fact is the extent to which plaintiffs' property was taken. Absent that proof, it is impossible to determine whether defendant's use of the easement was reasonably within the existing flowage easements. Plaintiffs offer tables as proof of the flooding incidents when the Hendricks became the owners. They assert that this information is accurately based upon hydrologic data compiled by defendant. However, defendant's hydrology reports, while they may be indicative of the water levels and flow rates involved, do not indicate the actual extent of the alleged taking of plaintiffs' property. The case suffers from a paucity of evidence insufficient to justify the disposition of this matter on summary judgment.

A further material fact at issue is whether the government operated the HST dam improperly. While the congressional purposes for which the dam was built and operated are readily discoverable, there is insufficient information in the record to adequately determine whether the government's operation of the dam was improper.

Accordingly, after a careful examination of the record, and with due consideration of the law, it is the opinion of this court, that genuine issues of material fact exist, and the action is not ripe for summary judgment. Thus, Defendant's Motion for Summary Judgment and Plaintiffs' Cross-Motion for Summary Judgment are denied.

IT IS SO ORDERED.