**INTEGON INDEMNITY CORPORATION,**
Plaintiff,

v.

**The UNITED STATES, Defendant.**

No. 108–84C.

United States Claims Court.

April 2, 1987.

Edward L. Nowak, Jacksonville Beach, Fla., attorney of record, for plaintiff.

Paul J. Ehlenbach, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant. David M. Cohen, Director, and M. Susan Burnett, Asst. Director, of counsel.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

NAPIER, Judge:

This suit arises from a contract between Gulf South Contractors, Inc., as the principal and contractor, and the Army Corps of Engineers. In this suit, the plaintiff, Integon Indemnity Corporation (Integon), a Miller Act payment bond surety, claims entitlement to a progress payment which it alleges was improperly paid by the defendant, United States Government, to the contractor. Defendant admits that the payment was made to the contractor, but denies that such payment was improper.

The Government has moved, over plaintiff's objection, for summary judgment on plaintiff's claim. It contends that there is no dispute as to any material fact and that the payment by the Government to the contractor was reasonable.

*Statement of the Case*

The parties' agreed statements of uncontroverted facts, insofar as pertinent, follow. On September 27, 1979, the Army Corps of Engineers entered into Contract No. DACA01–79–C–0117 with Gulf South Contractors, Inc. (GSC). As required by contract and the Miller Act, 40 U.S.C. § 270a (1976), performance and payment bonds were obtained by GSC from Integon on October 12, 1979. On January 27, 1981, GSC notified the Government that further payments under the contract should be forwarded to:

Gulf South Contractor's Inc.

c/o Palmer Howard and Nowak

302 3rd Street, Suite 4

Neptune Beach, Florida 32233

On March 12, 1981, a Government inspector determined during a routine inspection that GSC was "less than diligent" in completing the contract. He also noted that a subcontractor had quit work due to nonpayment and concluded that GSC appeared to lack the ability to complete the remainder of the work on the project in a timely manner. As a result of the lack of work being accomplished, the Government speculated that GSC was experiencing financial problems. By a letter dated March 16, 1981, the Government advised GSC that it was not making a diligent effort to complete the contract. On or about March 24, 1981, the Government made a telephone inquiry to Integon regarding GSC's financial problems. Integon's counsel and rep-

resentative, Edward Nowak, responded to the inquiry and informed the Government that he would investigate the problem. On April 22, 1981, GSC notified the Government that GSC was no longer in a position to complete the contract. On April 27, 1981, Integon notified the Government by mailgram that it had declared GSC in default and that no further distributions of contract funds should be made to GSC without the written consent of Integon.

By a letter dated June 8, 1981, the Government requested Integon to provide information regarding the "means and time proposed by yourself and/or our prime contractor for completion of the project." Plaintiff's representative and the Government contracting officer corresponded and met at various times throughout the summer. The Government organized a meeting for September 17, 1981, between GSC, Integon and the Government to resolve the issues of completion of the contract and future payments. Plaintiff's representative requested that the meeting be rescheduled because he could not attend due to a conflict. The meeting was held as scheduled on September 17, 1981, without plaintiff's representative. After the meeting with GSC, the Government determined that it should make payments under the contract to the contractor directly. Plaintiff's representative was not informed of this decision. On October 8, 1981, the Government paid the contractor $44,413 directly, pursuant to payment number 14.

On December 14, 1981, Integon made a demand for payment number 14. The Government denied plaintiff's demand. A final payment of $6,410 was paid directly to plaintiff reflecting a deduction of $1,090 from the contract price for the cost of completion work incurred by the Government. Integon filed this suit for reimbursement of the alleged improper payment to the contractor.

*Discussion*

In moving for summary judgment the Government asserts that the contracting officer exercised reasonable discretion in directing that payment number 14 of $44,413 be paid directly to the contractor, GSC, rather than to the contractor's surety, Integon. Integon contends that performance of the contract was complete and therefore the Government was a stakeholder and that as stakeholder, the Government may not make payments under the contract absent a judicial determination or an agreement between the parties as to disbursement.

In *Balboa Insurance Co. v. United States,* 775 F.2d 1158, 1162 (Fed.Cir.1985), the Federal Circuit ruled that " * * * the United States becomes a stakeholder with a duty of acting with reasoned discretion when a Miller Act surety alleges that the contractor has breached the contract by defaulting under one of the bonds."

The Federal Circuit has reiterated[1] the following factors as important in determining whether the Government has exercised reasonable discretion in distributing funds: (1) Attempts by the Government after notification by the surety, to determine that the contractor had the capacity and intent to complete the job. (2) Percentage of contract performance completed at the time of notification by the surety. (3) Efforts of the Government to determine the progress made on the contract after notice by the surety. (4) Whether the contract was subsequently completed by the contractor (not conclusive, but relevant to show the reasonableness of the contracting officer's determination of the progress on the project). (5) Whether the payments to the contractor subsequently reached the subcontractors and materialmen (this goes to the equitable obligation of the Government to subcontractors and others to see that they will be paid; also, because the surety is liable to the subcontractors, any money that

1. *See United States Fidelity & Guaranty Co. v. United States,* 230 Ct.Cl. 355, 676 F.2d 622 (1982); *United States Fidelity and Guaranty Co., v. United States,* 201 Ct.Cl. 1, 475 F.2d 1377 (1973); *Royal Indemnity Co. v. United States,* 208 Ct.Cl. 809, 529 F.2d 1312 (1976); *Argonaut Insurance Co. v. United States,* 193 Ct.Cl. 483, 434 F.2d 1362 (1970); *Fireman's Fund Insurance Co. v. United States,* 362 F.Supp. 842 (D.Kan. 1973).

reaches them furthers the objectives of the surety as well as those of the Government). (6) Whether the Government contracting agency had notice of problems with the contractor's performance previous to the surety's notification of default to the Government. (7) Whether the Government's action violates one of its own statutes or regulations. (8) Evidence that the contract could or could not be completed as quickly or cheaply by a successor contractor. [Citations omitted.]

*Balboa Insurance Co.*, 775 F.2d at 1164, 1165.

■ While there is a significant difference between the Government's role before and after completion of performance on a contract, *Argonaut Insurance Co. v. United States*, 193 Ct.Cl. 483, 493, 434 F.2d 1362, 1367–68 (1970), the issue of whether the Government exercised its discretion reasonably and considered the surety's interest is material whenever the Government is in the position of stakeholder. *Balboa Insurance Co.*, 775 F.2d at 1164.

A motion for summary judgment under Rule 56 shall be granted where it appears from the pleadings that there is no genuine issue as to any material fact and that such facts entitle the moving party to a judgment as a matter of law. RUSCC Rule 56(c); *Cooper v. Ford Motor Co.*, 748 F.2d 677 (Fed.Cir.1984). Summary judgment may not be granted where there are disputed material factual issues which can only be resolved by a trial on the merits. *Yuba Goldfields, Inc. v. United States*, 723 F.2d 884 (Fed.Cir.1983); *Niagara Mohawk Power Corp. v. United States*, 207 Ct.Cl. 576, 583, 525 F.2d 1380, 1385 (1975). The party seeking summary judgment has the burden of showing that there is no genuine issue of material fact. All inferences must be viewed in the light most favorable to the party opposing the motion. *Adickes v. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970); *Housing Corp of America v United States*, 199 Ct.Cl. 705, 710, 468 F.2d 922, 924 (1972).

■ In response to the Government's motion, Integon has presented extensive deposition, affidavit and other evidence in opposition to defendant's statements of the facts. Further, the parties disagree on many of the factors set forth in *Balboa*. For example, the following factual issues remain in dispute:

(1) *Whether the Government attempted after notification by the surety, to determine that the contractor had the capacity and intent to complete the job.*

The Government argues that at no time did it take the position that GSC had abandoned the project, nor had the Government requested Integon to assume responsibility. However, Integon claims that the contractor's abandonment of the project was discussed several times with the Government and that on March 23, 1981, the Government requested Integon to assume responsibility because of the contractor's abandonment of the contract. The Government's own evidence includes a letter of April 22, 1981, from GSC notifying the Government that Integon would immediately assume responsibility for the construction, management, and administration of the contract. Integon argues that on June 18, 1981, Lt. Col. King, the contracting officer, orally informed Integon's representative, Edward L. Nowak, that he considered the contractor to have abandoned the project. Defendant claims that at the meeting of September 21, 1981, GSC gave the Government every indication that it could and would perform the remainder of the contract.

(2) *The percentage of contract performance completed at the time of notification of default by Integon.*

The Government claims that the project was only 99 percent complete as of March 12, 1981. Integon claims that the project was completed and accepted on January 1, 1981 and that a Final Completion Statement was issued on January 30, 1981.

(3) *Efforts of the Government to determine the progress made on the contract after notice by the surety.*

Integon claims that the Government did not act reasonably after given notice by the surety to protect the surety's interest. The Government claims that it set up a meeting in September 1981, in an attempt to resolve final completion of the work and to determine to whom payment should be made. The Government argues that Integon's representative failed to attend the meeting. Integon argues that the meeting was not a genuine effort by the Government to determine the rights of the parties and argues that Integon informed the Government, specifically, Mr. Edward Crabtree, Chief, Contract Administration Branch, U.S. Army Corps of Engineers, that Integon would be unable to attend the meeting and requested that it be rescheduled. Plaintiff's position is supported by the affidavit of its representative, Edward Nowak, and by the deposition of Edward Crabtree.

(4) *Whether the payments to the contractor subsequently reached the subcontractors and materialmen.*

The Government argues that it did not receive any correspondence or notice from subcontractors or suppliers regarding their not having been paid. By affidavit, plaintiff's representative, Edward Nowak, stated that he was informed on February 20, 1981, by Elton Cobb, the area engineer and contracting officer's representative, that some subcontractors of GSC had ceased work on the project as a result of nonpayment. Integon alleges that the Government received at least one or more letters giving notice that a subcontractor had not been paid. The Government maintains that there is no definite answer as to whether subcontractors were paid but argues that the disputed payment may have been used to pay the subcontractors.

(5) *Whether the Government contracting agency had notice of problems with the contractor's performance previous to the surety's notification of default to the Government.*

The Government claims that it received only "unstated unilateral actions attributable to Integon" as notice that GSC was no longer in a position to complete the contract. Integon claims that the record is replete with indications that the Government had notice of problems with GSC's performance prior to Integon's notification of default by the contractor on April 27, 1981. In the Government's own Memorandum for Record written on March 12, 1981, Elton Cobb wrote that the contractor's performance to date was "less than diligent" and that the contractor was having financial problems on other government contracts. The Government contends that while it was aware that GSC had performance problems, the records show that GSC's performance had improved and that GSC could complete performance of the contract.

From the foregoing discussion, it is clear that there remain in dispute material factual issues concerning whether the Government used reasonable discretion in paying the contractor.

A determination of reasonableness is based upon factual issues, and as my colleague, Judge Tidwell, has stated: "What is reasonable in a given set of circumstances is an issue of fact." *Hendricks v. United States,* 10 Cl.Ct. 703, 706 (1986), citing *Chernick v. United States,* 178 Ct.Cl. 498, 504, 372 F.2d 492, 496 (1967). *See also Metric Constr. Co. v. United States,* 1 Cl.Ct. 383, 398–99 (1983).

### Conclusion

The defendant has not satisfied the Court that there remains no genuine issue of material fact regarding plaintiff's claim or that defendant is entitled to judgment as a matter of law. Accordingly, defendant's motion for summary judgment is denied.

The parties are directed to appear before the undersigned Judge at the National Courts Building, 717 Madison Place, N.W., Washington, D.C., on Thursday, May 14, 1987, at 10:30 a.m., or on an alternative mutually agreeable date, but no later than

May 28, 1987, to discuss further the status of the case and to set a schedule for the trial of this matter.

IT IS SO ORDERED.