**UNITED STATES FIDELITY & GUARANTY COMPANY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 330–86C.**

United States Claims Court.

March 24, 1989.

L. Graves Stiff, III, Birmingham, Ala., for plaintiff.

Allen D. Bruns, Dept. of Justice, Washington, D.C., for defendant. Major John Benson, U.S. Army, of counsel.

---

## OPINION

ROBINSON, Judge.

This case comes before the court on the parties' cross-motions for summary judgment. United States Fidelity & Guaranty Company, a Miller Act surety, claims it is entitled to $14,722.26 in progress payments that the defendant disbursed to the contractor's assignee. The defendant contends that the actions of its contracting officer in disbursing the progress payments were not arbitrary and capricious. Because the court has determined that issues of fact remain in dispute, it denies the parties' cross-motions. The court's reasoning follows.

## FACTS

On March 29, 1983, the Department of the Army awarded National Roofing and Painting Corporation (NRPC) Contract No. DAAH03–83–D–0017 for the painting of family housing quarters at the Redstone Arsenal, Alabama. Plaintiff United States Fidelity and Guaranty Company (USF & G), issued performance and payment bonds as surety for NRPC, pursuant to the Miller Act, 40 U.S.C. § 270a, *et seq.*

The contract incorporated by reference a standard progress payments clause requiring the government to pay the contractor, upon submission of proper invoices, the prices stipulated in the contract for services rendered and accepted. Before award of the contract, NRPC assigned the contract proceeds to First American Bank of Pensacola (FABP), pursuant to the Assignment of Claims Act of 1940, 31 U.S.C. § 3727, 41 U.S.C. § 15.

On June 1, 1983, NRPC submitted invoices for contract work performed from April 1, 1983, to May 31, 1983. The contract work covered by these invoices was inspected and accepted by the Army.

By letter dated June 3, 1983, NRPC President William G. Ogburn notified USF & G that NRPC was financially unable to complete its obligations under the contract and declared itself in default. Ogburn requested that USF & G take whatever action

necessary to fulfill NRPC's obligations under the contract.

On June 7, 1983, a representative of USF & G telephoned Myrtle Stewart, an Army contract specialist at Redstone Arsenal, and notified her of NRPC's default. The USF & G representative also informed Stewart that the surety would be taking action necessary to continue performance of the contract.

At a meeting between USF & G representatives and the Army's contracting officer on June 10, 1983, the contracting officer was shown the June 3, 1983 letter from NRPC to USF & G in which the contractor declared itself to be in default. The contracting officer informed the USF & G representatives that she had not been notified by NRPC of its default and that the contractor should notify her immediately if it considered itself in default.

On June 9 and 10, 1983, the contracting officer approved for payment two invoices submitted for payment June 1, 1983. On June 16, 1983, formal payment was made to FABP.

That same day, at a meeting between the contracting officer, the president of NRPC, and representatives of USF & G, USF & G informed the contracting officer that it had paid materialmen and other vendors of NRPC. The parties drafted a supplemental agreement at the meeting under which USF & G agreed to complete the contract, but progress payments earned by NRPC were to be paid to FABP and not USF & G unless: (1) the assignee (FABP) consented in writing to such payment, (2) a determination was made by the Comptroller General, or (3) a decision was made by a court of competent jurisdiction.

On June 21, 1983, the contracting officer determined that terminating the contract would not be in the best interests of the U.S. Government and executed the supplemental agreement. After completing the contract, USF & G brought this suit against the government for $14,722.26, the amount of progress payments it claims the government wrongly paid FABP after being notified of NRPC's default. The case is now before the court on the parties'

cross-motions for summary judgment pursuant to RUSCC 56.

## QUESTION PRESENTED

Is either the plaintiff or the defendant entitled to summary judgment as a matter of law upon the facts now available to the court in the record?

## DISCUSSION

To grant a motion for summary judgment, the Claims Court must find that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). The moving party has the burden of establishing that there is no material fact in dispute and that it is entitled to judgment on the applicable law. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Molinaro v. Fannon/Courier Corp.,* 745 F.2d 651, 653–54 (Fed.Cir.1984). The party opposing the motion has the burden of showing sufficient evidence that there is a genuine issue of material fact in dispute. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). All justifiable inferences are to be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. at 2513.

Plaintiff's motion for summary judgment relies upon its interpretation of *Great American Insurance Co. v. United States,* 492 F.2d 821, 203 Ct.Cl. 592 (1974). There, the government released a final contract payment to a government contractor after due notification of the unpaid claims of laborers and materialmen. In holding the government liable to the surety for such payments, the court ruled that the government had improperly abandoned its role as stakeholder in electing to decide the merits of the conflicting claims to the final payment without a valid reason for doing so.

The plaintiff's reliance upon *Great American* is, however, misplaced, for the instant case concerns progress payments on a government contract, not a final payment. The law governing the government's duties as to progress payments when a contractor is in default on a government contract is set forth in *Balboa Insurance Co. v. United States,* 775 F.2d 1158 (Fed.Cir.1985), and its progeny. *See, e.g., Integon Indemnity Corp. v. United States,* 12 Cl.Ct. 115 (1987), and *United Pacific Insurance Co. v. United States,* 16 Cl.Ct. 555 (1989). Citing *Argonaut Insurance Co. v. United States,* 434 F.2d 1362, 1367, 193 Ct.Cl. 483 (1970) and *United States Fidelity & Guaranty Co. v. United States,* 676 F.2d 622, 628, 230 Ct.Cl. 355 (1982), the court in *Balboa* noted that, with respect to progress payments on government contracts, the government has a vital interest in completion of the work, and thus broad discretion in making such payments. *Balboa Insurance Co. v. United States,* 775 F.2d at 1164. Moreover, the court determined that where the government is entitled to exercise its discretion, the "plaintiff has an unusually heavy burden of proof in showing that the determination made ... was arbitrary and capricious...." *Id.,* citing *Royal Indemnity Co. v. United States,* 529 F.2d 1312, 1320, 208 Ct.Cl. 809 (Ct.Cl.1976).

Here, the plaintiff has neither alleged "arbitrary and capricious" government action in making the progress payments to FABP, nor met its heavy burden of proving such an allegation. Consequently, the plaintiff has not demonstrated that it is entitled to judgment as a matter of law on its motion for summary judgment.

In its cross-motion for summary judgment, the defendant contends that, not having received notice from NRPC of its intention to default, the contracting officer's decision to approve payment for inspected and approved work "clearly was reasonable." The defendant reaches this conclusion without justifying its actions under an eight-part test set out in *Balboa* for determining the reasonableness of such payments. Without such an analysis, the defendant's conclusory assertion that the payment was reasonable is nothing more than gratuitous blustering. Nor does the defendant cite any authority for the propo-

sition that notice of default must come from the contractor itself rather than the surety.

The law with respect to the government's obligation to a Miller Act surety upon a contractor's default is clearly stated in *Balboa.* There, the Court of Appeals for the Federal Circuit agreed with a Court of Claims determination that, upon notification by the surety of the unsatisfied claims of materialmen, the government becomes a stakeholder with respect to the amount not yet paid under the contract. *Balboa Insurance Co. v. United States,* 775 F.2d at 1162.

Defendant concedes that it was notified by USF & G of NRPC's default by telephone on June 7, 1983, nine days before the contested payments were issued. Three days later, the contracting officer saw the letter sent to USF & G in which NRPC President Ogburn declared his company to be in default on the contract. On June 16, 1983, the day payment was disbursed to FABP, the contracting officer was shown proof that USF & G had paid claims of NRPC's subcontractors and materialmen.

Whether the government was duly notified by USF & G of NRPC's default is a determination of fact. Here, it is uncontroverted that the government had due notification of NRPC's default at least nine days before the disputed payments were issued and certainly on the very day the payments were issued. Under the rule established by *Balboa,* once such notification is received, the government's discretion and flexibility in releasing progress payments is limited by its "duty to exercise its discretion responsibly and to consider the surety's interest in conjunction with other problems encountered in the administration of the contract." *Argonaut Insurance Co. v. United States,* 434 F.2d at 1368. Moreover, when a surety has informed the government that the contractor is in default, the government has an obligation to take "reasonable steps to determine for itself that the contractor has the capacity and intention to complete the job." *Balboa Insurance Co. v. United States,* 775 F.2d at 1164, *citing Fireman's Fund Insurance*

*Co. v. United States,* 362 F.Supp. 842, 846 (D.Kan.1973).

The Federal Circuit in *Balboa* identified eight factors considered by the Court of Claims and other courts in determining whether the government has exercised reasonable discretion in distributing funds:

1. Attempts by the government after notification by the surety, to determine that the contractor had the capacity and intent to do the job.

2. Percentage of contract performance completed at the time of notification by the surety.

3. Efforts of the government to determine the progress made on the contract after notice by the surety.

4. Whether the contract was subsequently completed by the contractor (not conclusive, but relevant to show the reasonableness of the contracting officer's determination of the progress on the project).

5. Whether the payments to the contractor subsequently reached the subcontractors and materialmen (this goes to the equitable obligation of the government to subcontractors and others to see that they will be paid; also, because the surety is liable to the subcontractors, any money that reaches them furthers the objective of the surety as well as those of the government).

6. Whether the government contracting agency had notice of problems with the contractor's performance previous to the surety's notification of default to the government.

7. Whether the government's action violates one of its own statutes or regulations.

8. Evidence that the contract could or could not be completed as quickly or cheaply by a successor contractor. [Citations omitted]

*Balboa Insurance Co. v. United States,* 775 F.2d at 1164, 1165.

The facts of each case are to be reviewed in light of these factors and weighed with deference to each parties' interests in the

contract. *United Pacific Insurance Co. v. United States*, 16 Cl.Ct. 555 (1989). Such an analysis in the instant case reveals, contrary to the government's position, that: (1) there are genuine issues of material fact in dispute that bear upon the reasonableness of the contracting officer's disbursal of funds to FABP, and (2) even if these issues were not in dispute, the government is not entitled to judgment as a matter of law on the evidence now before the court. For example, the following factual issues remain in dispute:

1. Attempts by the government after notification by the surety, to determine that the contractor had the capacity and intent to complete the job.

   Neither party has provided evidence of the government's efforts to determine the contractor's ability to complete the contract before disbursing the progress payments. The scant attention the defendant has paid to this factor does not support its entitlement to judgment as a matter of law. The government's insistence that it receive notice of NRPC's default from the contractor itself, and its observation that the contract work was "apparently proceeding on schedule" implies that it made no investigation of the contractor's ability to complete the job, but instead waited passively, after being informed of the contractor's default, for NRPC to confirm this fact. If the defendant made any effort whatsoever to investigate NRPC's ability to complete the contract, it has neither argued this fact nor presented a shred of evidence to corroborate it.

2. Percentage of contract performance completed at the time of notification of the surety.

   An examination of the record reveals no evidence as to how complete the contract was at the time of NRPC's default.

3. Efforts of the government to determine the progress made on the contract after notice by the surety.

   The defendant has provided no evidence that it made any investigation whatsoever after being notified of NRPC's default and before disbursing the progress payments.

4. Whether the contract was subsequently completed by the contractor.

   It is uncontroverted that NRPC abrogated its responsibility to complete the contract and that USF & G assumed responsibility for completing the contract. The contracting officer signed an agreement with USF & G to this effect. While not conclusive, this factor detracts from the government's contention that the contract work was progressing satisfactorily when it made the disputed progress payment.

5. Whether the payments to the contractor subsequently reached the subcontractors and materialmen.

   It is not in dispute that the government payments never went to NRPC or the subcontractors and materialmen, but instead went to FABP. Nor is it controverted that USF & G, rather than the contractor or FABP paid the subcontractors and materialmen. This factor also militates against the government's contention that it is entitled to judgment as a matter of the law. Also, because USF & G's payments to NRPC's subcontractors and materialmen advanced the Army's goal of contract completion, these payments reinforce the government's equitable obligation to reimburse the surety rather than disburse payment to FABP.

6. Whether the government contracting agency had notice of problems with the contractor's performance previous to the surety's notification of default to the government.

   There is no evidence, nor does the plaintiff argue, that the defendant had notice of any problems with NRPC's performance prior to the notification of NRPC's default.

7. Whether the government's action violates one of its own statute or regulations.

   No such statute or regulation has been cited.

8. Evidence that the contract could or could not be completed as quickly or cheaply by a successor contractor.

The contracting officer determined that due to potential liability of conflicting tax, labor and material claims, and NRPC's assignment of its interest in the contract, termination of the contract was precluded. Moreover, the Army and USF & G reached a takeover agreement under which USF & G agreed to complete the contract. For these reasons the contracting officer determined that termination was not in the best interests of the government and that the contractor and its surety were liable for completion of the contract.

The facts presented to this court, reviewed in light of the eight *Balboa* factors, are insufficient to determine the reasonableness of the government's payments to FABP. As stated by Judge Napier in *Integon*, "A determination of reasonableness is based upon factual issues, and ... 'what is reasonable in a given set of circumstances is an issue of fact.'" *Integon Indemnity Corporation v. United States*, 12 Cl.Ct. 115, 119 (1987), citing *Hendricks v. United States*, 10 Cl.Ct. 703, 706 (1986) [additional citations omitted]. Here, the reasonableness of the government's payments to FABP after being informed of NRPC's default by USF & G remains a material factual issue in dispute. The resolution of this issue depends on the factors enumerated in *Balboa*, for which there is an insufficient record upon which this court can render judgment.

Even assuming that the record as to these factors were complete, it is not at all clear that the government is entitled to judgment as a matter of law. The evidence of record available now indicates that the defendant possibly failed in its duty to conduct a reasonable investigation into the ability of NRPC to complete the contract, thereby abandoning its equitable responsibility to USF & G.

### CONCLUSION

The reasonableness of the government's payments to FABP after being informed of NRPC's default by USF & G is a material factual issue that remains in dispute. Thus, neither party is entitled to judgment as a matter of law on the facts currently before the court. Consequently, the court denies both plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. The court by separate order will schedule further proceedings.